UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES McKINNON | : | PRISONER<br>CIVIL NO. 3:03CV158 (JCH)(HBF) |
| v. | : | |
| LINDA MESSENGER, ET AL. | : | JANUARY 22, 2004 |

### DEFENDANTS' ANSWER AND SPECIAL DEFENSES

The allegations in the plaintiff's Complaint are not contained in any numbered paragraphs as required by Rule 10(b) of the Federal Rules of Civil Procedure. Instead of making any factual allegations in his Complaint, the plaintiff refers to three grievances which he has attached to the Complaint. Given the nature of the Complaint in this case, the defendants must necessarily respond in a narrative fashion on the assumption that the allegations are contained in the grievances attached to the Complaint.

The defendants deny that they have in any way violated the plaintiff's civil rights.

Inmates who are being followed by an Infectious Disease Specialist ("I.D. Specialist") are typically scheduled to be seen at the Infectious Disease Clinic ("I.D. Clinic") every three months unless there is something that occurs relating to their infectious disease that requires them to be seen sooner. Any day-to-day medical issues that come up between their scheduled I.D. Clinic appointments are handled by the facility staff physicians and the nursing staff. The plaintiff has had this procedure explained to him on numerous occasions at the Garner Correctional Institution ("Garner C.I.") and the Cheshire Correctional Institution ("Cheshire C.I.").

The plaintiff saw the I.D. Specialist at the I.D. Clinic on November 20, 2002. At that time, the I.D. Specialist ordered some lab work to be done at the end of January, 2003 and asked that the plaintiff be scheduled to be seen at the I.D. Clinic after the blood work.

On December 18, 2002, the plaintiff approach Iris Prescott, R.N., and demanded to be seen by the I.D. Specialist. Ms. Prescott then informed Linda Messenger, LPN, of the plaintiff's demand. Ms. Messenger is the HIV Coordinator at Garner C.I. and does all of the scheduling for the I.D. Specialist. Ms. Messenger asked Ms. Prescott to meet with the plaintiff to find out why he wanted to see the I.D. Specialist before his next scheduled appointment. When Ms. Prescott attempted to talk with the plaintiff, he was uncooperative and refused to discuss any medical issues with her or state why he wished to see the I.D. Specialist. When informed of this, Ms. Messenger indicated that they would continue their ongoing efforts to reason with the plaintiff but that he would not be scheduled for an emergency visit to the I.D. Specialist for no apparent reason.

Because of the plaintiff's ongoing abusive and threatening behavior, the I.D. Specialist was asked on January 8, 2003 if he could see the plaintiff despite the fact that he already had a full caseload of patients to see that day. When seen on January 8, 2003, the plaintiff's primary concerns had to do with his desire for additional soap and the continued itchiness of his toenails for which he was already receiving medication. These issues did not require a special emergency appointment at the I.D. Clinic and could easily have been addressed by other medical staff.

The only claim against Ms. Prescott is that she had the nerve to ask the plaintiff why he wanted to see the I.D. Specialist. This claim is frivolous on its face.

The only claim against Ms. Dorsey is that she responded to two of his grievances by informing him that he can see the Garner staff physician in between his scheduled appointments with the I.D. Specialist. She also informed him that he should request the renewal of Tylenol when the original order expires and that it was appropriate for Ms. Prescott to inquire as to why he wanted to have an emergency appointment with the I.D. Specialist. Ms. Dorsey's responses were entirely appropriate.

With respect to Ms. Messenger, the plaintiff appears to be claiming that she either stopped or failed to reorder soap, Vaseline and/or Tylenol and that she refused to allow him to keep his appointment with the I.D. Specialist.

As indicated above, the plaintiff did not have an appointment with the I.D. Specialist on December 18, 2002. In fact, he was not due to see the I.D. Specialist again until the beginning of February, 2003. As the HIV Coordinator for Garner, it is Ms. Messenger's responsibility to monitor the HIV patients and determine whether they need to be seen in the I.D. Clinic between appointments. She had the right and the responsibility to inquire of the plaintiff as to why he wanted to be seen in the I.D. Clinic on an emergency basis on December 18, 2002.

The plaintiff's order for Tylenol expired on November 29, 2002. He never complained to Ms. Messenger of any headaches. When he saw the I.D. Specialist on January 8, 2003, the plaintiff did not complain of any headaches and did not request any Tylenol. When the plaintiff did request Tylenol on January 22, 2003, the I.D. Specialist ordered it.

The plaintiff did miss one dose of multivitamins on December 7, 2002 when he showed up at the medication window five hours late and the multivitamin packet could not be located.

3

Vaseline was to be given to the plaintiff for dry skin only as needed and he was to receive no more than one bar of Basis soap per month. These were ordered by the I.D. Specialist simply because the plaintiff was asking for them and not because of any medical necessity. They were discontinued by the I.D. Specialist effective February 8, 2003. There is no indication in the record that the plaintiff ever discussed soap or Vaseline with Ms. Messenger in November or December, 2002. The records do reflect that he refused a tube of Vaseline in December, 2002 from some other medical staff person.

The copy of the Complaint that was served on the defendants does not contain any claim for relief. However, the civil docket printout for this case reflects that the plaintiff has made a demand for some money damages. The defendants will therefore assume that the plaintiff has at some point made a demand for money damages.

### FIRST AFFIRMATIVE DEFENSE

To the extent that this is deemed an action for money damages against the defendants in their official capacities, it is barred by the Eleventh Amendment to the United States Constitution.

### SECOND AFFIRMATIVE DEFENSE

To the extent that this Complaint may be construed as a claim against the defendants based on alleged malpractice or negligence, it is barred by the immunity granted to State employees under Conn. Gen. Stat. § 4-165.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

The defendants are entitled to qualified immunity in that, at all relevant times, they reasonably believed that their conduct did not contravene any established statutory or constitutional rights and, in fact, their conduct did not violate any clearly established statutory or constitutional rights.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that the plaintiff suffered any injury at all, which injury is not apparent from the record, such injury was the direct or indirect result of his own misconduct in repeatedly and deliberately refusing to cooperate with the reasonable requests of medical staff.

        DEFENDANTS
        Linda Messenger, et al.

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY: *[signature]*
        Richard T. Couture
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct05480
        E-Mail: richard.couture@po.state.ct.us
        Tel.: (860) 808-5450
        Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 22nd day of January, 2004:

James McKinnon, No. 100770
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06080

　　　　　　　　　　　　　　　　　　*/s/ Richard Couture*
　　　　　　　　　　　　　　　　　　Richard T. Couture
　　　　　　　　　　　　　　　　　　Assistant Attorney General