KELVIT BURGESS, Plaintiff, -v- HENRY GARVIN, Superintendent, DR. HERBERT E. GOULDING II, and BARBARA A. WILLIAMS, R.N./A.N., Defendants.

01 Civ. 10994 (GEL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 14419

August 18, 2003, Decided
August 19, 2003, Filed

DISPOSITION: [*1] Defendants' motion for summary judgment granted.

CASE SUMMARY

PROCEDURAL POSTURE: Defendants, prison superintendent, doctor, and nurse, filed a motion for summary judgment in plaintiff inmate's 42 U.S.C.S. a 1983 action alleging that the superintendent, doctor, and nurse violated the inmate's rights under the Americans with Disabilities Act and the Eighth Amendment.

OVERVIEW: The inmate suffered from a degenerative condition of the tibia. He filed a grievance, seeking to be moved closer to the cafeteria. The doctor initially felt that the inmate did not meet the criteria for an accommodation. A month later, the doctor ordered x-rays and recommended that the inmate be moved closer to the cafeteria. After viewing the x-rays, the doctor ordered that the inmate see an orthopedic consultant. The inmate alleged that the doctor was totally indifferent at the first examination and that the doctor only ordered x-rays after the inmate filed grievances against the doctor. Summary judgment was granted in the inmate's Americans with Disabilities Act (ADA) claim, because the inmate did not exhaust the administrative remedy provided by the department of justice for ADA claims against state agencies. 42 U.S.C.S. a 1997e(a) required the inmate to exhaust all such remedies. The inmate's claims of inadequate medical attention did not violate the Eighth Amendment. The record did not establish that the doctor was deliberately indifferent, as he examined the inmate, performed x-rays, provided medication, and referred the inmate to see an orthopedic specialist.

OUTCOME: The motion for summary judgment was granted.

CORE TERMS: grievance, accommodation, prisoner, administrative remedies, knee, pain, deliberate indifference, summary judgment, indifferent, exhaustion, x-ray, closer, prison, nonmoving party, personally, exhaust, orthopedist, correctional facility, cruel and unusual punishment, failure to exhaust, medical condition, plain language, factual issue, medical care, non-movant, subjective, exhausted, disease, warden, medical attention

LexisNexis (TM) HEADNOTES - Core Concepts -   Hide Concepts

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN1] When adjudicating a motion for summary judgment, all ambiguities must be resolved in favor of the nonmoving party, although the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation. A court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments. Summary judgment is then appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN2] In the context of a motion for summary judgment, to establish a genuine issue of material fact, a plaintiff must produce specific facts indicating that a genuine factual issue exists. If the evidence produced by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN3] Authority in the United States District Court for the Southern District of New York is mixed as to whether prisoners are required to exhaust the department of justice remedies before bringing a civil action in federal court.

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN4] See 42 U.S.C.S. a 1997e(a).

Administrative Law: Judicial Review: Reviewability: Exhaustion of Remedies
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN5] The plain language of 42 U.S.C.S. a 1997e(a) requires a prisoner to exhaust such administrative remedies as are available. It is not limited to administrative redress within the prison system in which the prisoner is being held, or to administrative remedies provided by any particular sovereign. Nor is there an exception for administrative remedies that are optional for non-prisoners. The Americans with Disabilities Act does not itself require exhaustion of the department of justice administrative process, but permits suit to be brought without resort to the administrative remedies. The Prison Litigation Reform Act would be meaningless if it only required prisoners to exhaust administrative processes that were already, by their own terms, prerequisite to suit in federal court. Rather, its plain language and manifest

intention is to require prisoners to exhaust whatever administrative remedies "are available."

Constitutional Law: Cruel & Unusual Punishment

[HN6] The Eighth Amendment's prohibition of cruel and unusual punishments has been interpreted by the United States Supreme Court to prohibit a state from acting with deliberate indifference to the serious medical needs of its prisoners. That formulation encompasses both a subjective element or state of mind on the part of prison officials - a knowledge of an excessive risk to an inmate's health or safety - and an objective element or physical condition - a "sufficiently serious" medical condition or risk of harm.

COUNSEL: Kelvit Burgess, Pro se.

For Defendants: Hillary A. Tennant, Assistant Attorney General, Eliot Spitzer, Attorney General of the State of New York, New York, NY.

JUDGES: GERARD E. LYNCH, United States District Judge.

OPINIONBY: GERARD E. LYNCH

OPINION: OPINION AND ORDER

GERARD E. LYNCH, District Judge:

In this action under [42 U.S.C. a 1983](), plaintiff Kelvit Burgess, a prisoner who, at the relevant times, was incarcerated at New York's Mid-Orange Correctional Facility ("Mid-Orange"), alleges that defendants Henry Garvin, Dr. Herbert Goulding, and Nurse Barbara Williams violated his rights under the [Americans with Disabilities Act]() ("ADA") and the [Eighth Amendment's]() proscription of cruel and unusual punishment, by failing to adequately treat, and provide reasonable accommodations on account of, the pain in his knee due to Blount's disease. Defendants have moved for summary judgment. The motion will be granted.

BACKGROUND

Burgess suffers from Blount's disease, a degenerative condition of the tibia. During childhood, he had five operations on his knee aimed at straightening his legs; pins were also implanted[*2] into the bone as he grew. (Burgess Tr. 18-19.) However, the deterioration in his knees is progressive, and walking long distances, carrying heavy loads, or climbing stairs can be painful. (Id. 23-24. When he was transferred to Mid-Orange on September 20, 2001, he felt his knee condition was "manageable." (Id. 38.) However, he claims that because he needed to walk long distances, sometimes through bad weather, to the cafeteria, and at times had to stand in long lines outside, the condition deteriorated. He sought, by filing a grievance, to be moved closer to the cafeteria or to be provided his meals in his cell, accommodations that had been provided him at Woodburn Correctional Facility three to four years earlier. (Id. 32.) He also sought medical attention. (Id.; Goulding Aff. P 23; Tennant Decl. Ex. I.)

According to prison medical records, Burgess was examined by defendant Dr. Herbert E. Goulding on September 28, 2001. Goulding felt that Burgess "did not meet the criteria for [an] accommodation," partly because the accommodations requested were not available at Mid-Orange. (Goulding Aff. P 26.) He issued permits for Burgess to be given a bottom bunk, to be permitted[*3] the use of a cane, and to be limited to "minimal weight lifting." (Id. PP 8, 27; Tennant Decl. Ex. F at 32.) He also ordered another examination for one to two weeks later, but he did not actually see Goulding again until October 25. At that time, Goulding ordered an X-ray and recommended that Burgess be moved closer to the mess hall. (Goulding Aff. PP 10-11; Tennant Decl. Ex. N.) After viewing the X-rays and examining Burgess on November 14, Goulding ordered that Burgess see "an orthopedic consultant" and recommended that he be placed in "a situation where he would not have to climb stairs and be involved in activities that would further aggravate his condition." (Goulding Aff. PP 13-14; Tennant Decl. Ex. F at 28.) At all relevant times, Burgess has been provided with the painkiller Naprosyn. (Id. 27.) In early December, Burgess was transferred to Marcy Correctional Facility for medical reasons. (Id. Ex. G.)

Burgess complains that Goulding was "totally indifferent" at his first examination in that the doctor simply "glanced at" his knee "without even actually holding the leg or feeling around the knee to see if anything was out of place," did not look at his medical records, [*4] and "brushed ... off" his request to see an orthopedist. (Burgess Tr. 43-44, 58; see also id. at 61 (describing Goulding as "very indifferent" and complaining that he just does "a lot of writing").) He disagreed with Goulding's diagnosis that he was experiencing "phantom pains" and believes that Goulding later ordered the X-rays only because of the grievances Burgess had filed against him following the first examination. (Id. 27-29, 42.) Burgess believes that had he been seen by an orthopedist, he "would have probably been [given] passes not to be walking in the snow and to receive ... bed rest" and therefore "wouldn't have [had] to suffer the pain that I have suffered." (Id. 44-45.)

Burgess alleges that Nurse Williams, who was responsible for investigating his grievance, was indifferent in that she apparently "never once read through [his] folders" since "she made the exact comment that Dr. Goulding made" in her response to his grievance. (Id. 63.) He alleges that Superintendent Garvin was aware of his condition "due to the grievance," and that "instead of ... fully investigating the matter, he just went on the word of Dr. Goulding," and "failed to move [him] [*5] closer to the infirmary or closer to the mess hall." (Id. 59-60.)

Burgess claims that the failure to provide him the requested accommodations, along with certain deficiencies in the shower and toilet facilities, violated the ADA. (Burgess Tr. 64-65; Tennant Decl. Ex. I.) He also claims that the fact that he had to "walk in the rain and in the snow just to go get a meal ... regardless [of the] pain," due to Goulding's initial determination that no accommodations were called for, and the other defendants' acquiescence in that finding, constituted cruel and unusual punishment. (Id. 64-65, 67.)

DISCUSSION

I. Summary Judgment Standard

[HN1] When adjudicating a motion for summary judgment, all ambiguities must be resolved in favor of the nonmoving party, although "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments. [*6] " Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). Summary judgment is then appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

[HN2] To establish a genuine issue of material fact, the plaintiff "'must produce specific facts indicating' that a genuine factual issue exists." Scotto, 143 F.3d at 114 (quoting Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "If the evidence [produced by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could [*7]reasonably find for the [non-movant]." Pocchia v. NYNEX Corp., 81 F.3d 275, 277 (2d Cir. 1996) (quoting Liberty Lobby, 477 U.S. at 252).

II. Americans with Disabilities Act

   Defendants argue that the ADA claim must be dismissed for failure to exhaust administrative remedies. Burgess has apparently filed and pursued grievances with the state prison authorities in connection with each of his claims, and defendants do not claim that he has not exhausted the remedies provided him by New York State. However, they contend that this is insufficient, since the United States Department of Justice ("DOJ") provides a separate administrative remedy for alleged violations of the ADA by state agencies, see 28 C.F.R. aa 35.170 et seq., and that Burgess has not availed himself of that.

[HN3] Authority in this District is mixed as to whether prisoners are required to exhaust the DOJ remedies before bringing a civil action in federal court. Compare Burgess v. Goord, 1999 U.S. Dist. LEXIS 611, Dkt. No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *22 n.6 (S.D.N.Y. Jan. 26, 1999) (stating in dictum that dismissal would be necessary due to failure[*8] to exhaust DOJ remedy), with Shariff v. Artuz, 2000 U.S. Dist. LEXIS 12248, Dkt. No. 99 Civ. 321 (DC), 2000 WL 1219381, at *3 (S.D.N.Y. Aug. 28, 2000) (holding exhaustion of DOJ remedy unnecessary for state prisoner because the ADA itself

does not require exhaustion).

The Prison Litigation Reform Act ("PLRA") provides that:

[HN4] No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. a 1997e(a).     [HN5] The plain language of this statute requires the prisoner to exhaust "such administrative remedies as are available." It is not limited to administrative redress within the prison system in which the prisoner is being held, or to administrative remedies provided by any particular sovereign. Nor is there an exception for administrative remedies that are optional for non-prisoners. Thus, while Judge Chin in Shariff correctly pointed out that the ADA does not itself require exhaustion of the DOJ administrative process, but permits suit to be brought without[*9] resort to the administrative remedies, 2000 U.S. Dist. LEXIS 12248, 2000 WL 1219381, at *3 (citing 28 C.F.R. a 35.172, App. A), defendants here do not base their exhaustion argument on the ADA, but on the separate requirement subsequently enacted in the PLRA. (D. Mem. 3.) The PLRA would be meaningless if it only required prisoners to exhaust administrative processes that were already, by their own terms, prerequisite to suit in federal court. Rather, its plain language and manifest intention is to require prisoners to exhaust whatever administrative remedies "are available." Therefore, Burgess's ADA claim must be dismissed.

III. Eighth Amendment: Deliberate Indifference to Medical Needs

[HN6] The Eighth Amendment's prohibition of cruel and unusual punishments has been interpreted by the Supreme Court to prohibit a state from acting with "deliberate indifference to [the] serious medical needs" of its prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). That formulation encompasses both a subjective element or state of mind on the part of prison officials - a knowledge of an excessive risk to an inmate's health or safety[*10] - and an objective element or physical condition - a "sufficiently serious" medical condition or risk of harm. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal citations omitted); see also Farmer v. Brennan, 511 U.S. 825, 828-29, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).

Plaintiff's claims of inadequate medical attention do not meet this standard. With respect to the subjective element, neither the claim that Goulding performed an inadequate examination, nor the fact that he disagreed with Burgess, or with the orthopedist who examined Burgess when he was at another facility, about what accommodations were appropriate, creates a factual issue as to whether Goulding was indifferent. Even if some aspect of Goulding's treatment constituted malpractice (and there is no evidence of that), more would be

required for a fact-finder to find deliberate indifference, rather than a good-faith medical opinion. The undisputed facts that Goulding examined Burgess, ordered a follow-up examination in one or two weeks, performed a more thorough examination, including x-rays, within a month of the first examination, ordered certain accommodations, provided[*11] medication, and referred Burgess to an orthopedic specialist, refutes any claim that Goulding ignored Burgess's medical condition. Burgess does not allege that Nurse Williams was involved with his medical treatment, but rather that she inadequately investigated his grievance. The record reflects that she paid timely attention to the grievance and filed a report in the normal course. That Burgess disagreed with her conclusion, or that a later grievance met with more success, does not create an issue of fact as to whether she was indifferent. The record establishes otherwise.

With respect to the objective element, Burgess does not claim that he faced any emergency, suffered a substantial injury, or suffered "constant, unremediated pain." Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002). While Burgess's condition certainly created discomfort, there is no allegation (let alone evidence) that his pain went untreated or that the failure to treat his condition more effectively threatened serious harm. As to both elements of the claim, the facts alleged here do not rise to the level of "deliberate indifference" to "serious medical needs" and so do not constitute a violation [*12]of the Eighth Amendment.

Defendant Garvin seeks dismissal on the grounds that he was not personally involved in Burgess's medical care. On the facts of this case, it is unnecessary to decide whether a warden who is personally unresponsive to grievances about medical care can be found to have been personally involved in deliberate indifference that creates intolerable conditions. Here, as there was no violation of Burgess's Eighth Amendment rights by anyone, there is no basis for finding the warden liable on any theory.

CONCLUSION

For the reasons above, defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: August 18, 2003

GERARD E. LYNCH

United States District Judge