*Exhibit 1*    *James McKin*

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES McKINNON | : | PRISONER<br>CIVIL NO. 3:03CV158 (JCH)(HBF) |
| v. | : | |
| LINDA MESSENGER, ET AL. | : | MARCH 18, 2004 |

### NOTICE OF MANUAL FILING

Please take notice that defendants, Linda Messenger, et al., have manually filed the following documents:

a. Affidavit of Linda Messenger, L.P.N., with attached exhibits A through H;
b. Affidavit of Iris Carlone, R.N., with attached exhibit A;
c. Affidavit of Helen Dorsey;
d. Affidavit of James O'Halloran, D.O., with attached exhibits A through G;
e. Affidavit of Edward Blanchette, M.D.;
f. Affidavit of Joan Dobson, R.N.;
g. Affidavit of Barbara Straiton, L.P.N., with attached exhibit A; and
h. Attachments A (Administrative Directive 9.6) and C (Ruling and Order July 24, 2001 AHN) to Defendants' Memorandum in Support of Motion for Summary Judgment.

These document have not been filed electronically because

[ X ]   the documents cannot be converted to an electronic format
[   ]   the electronic file size of the document exceeds 1.5 megabytes
[   ]   the document or thing is filed under seal pursuant to Local Rule of Civil Procedure 5(d) or Local Rule of Criminal Procedure 57(b)
[   ]   Plaintiff/Defendant is excused from filing this document or thing by Court order.

The documents have been manually served on all parties.

Respectfully submitted,

*Richard Couture*

Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Phone: (860) 808-5450
Fax: (860) 808-5591
E-mail: richard.couture@po.state.ct.us
Federal Bar No. ct05480

## CERTIFICATION

I hereby certify that a copy of the foregoing Notice of Manual Filing was sent by first class mail, postage prepaid, this 18th day of March, 2004, to:

James McKinnon, No. 100770
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080

Richard T. Couture
Assistant Attorney General

Exhibit A James McKin

23

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CLERK
U.S. DISTRICT COURT
BRIDGEPORT CONN.

Jul 25   9 35 AM '01

FILED

SHANNON DICKINSON

      v.

CONNECTICUT DEPARTMENT
OF CORRECTION, et al.[1]

:
:
:
:
:
:

PRISONER
Case No. 3:00CV1339(AHN)

## RULING ON DEFENDANTS' MOTION TO DISMISS

The plaintiff filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915.  He alleges that the defendants violated his rights by housing him in a cell that was not wheelchair accessible.  He alleges further that he fell when attempting to use a toilet that was not equipped with a grab bar. He seeks damages as well as an injunction requiring the defendants to make the facility wheelchair accessible.  Pending is the defendants' motion to dismiss.  For the reasons that follow, the defendants' motion is granted.

### Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

---

[1]The named defendants in this action are the Connecticut Department of Correction, Commissioner John J. Armstrong, Warden Trapassieo, Dr. Stephen Stein and Nurse Dawn.

favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

Facts

Keeping this standard in mind, the court accepts as true the following allegations taken from the complaint.

The plaintiff, a paraplegic, is confined to a wheelchair. On July 16, 1999, he was brought to the Bridgeport Correctional Center. The rear door, through which inmates are routinely

2

transported, was not wheelchair accessible.  The staff had to lift plaintiff's wheelchair up several steps and almost dropped him.  The plaintiff later spoke to the deputy warden about the incident.

On July 20, 1999, a state court judge ordered that the plaintiff be moved to a wheelchair/handicapped accessible facility.  The plaintiff was not immediately moved.  Instead, he continued to be housed in the hospital unit which was wheelchair accessible.

At one point, the plaintiff was moved from the hospital unit to general population.  Showers and toilet facilities in general population were not wheelchair accessible.  The plaintiff was denied access to these facilities for two days, at which time he was returned to the hospital unit.  Even in the hospital unit, the toilets were not equipped with grab bars and the toilet bowls were too low.  On October 13, 1999, the plaintiff was moved from the hospital unit to room 14 for two weeks because the hospital unit was overcrowded.  Room 14 was not equipped with a toilet or sink.  The plaintiff filed a grievance on November 15, 1999.

On December 15, 1999, the plaintiff fell while trying to move from his wheelchair to the toilet.  He hit his head on the wall and injured his neck.  Nurses Tony, Jeff and June Smith responded to his call.  They lifted him from the floor and placed him on his bed.  Nurse Jeff, the head shift nurse, determined that the plaintiff required a neck brace.  Nurse Tony disagreed.

Nurse Jeff put a soft-collar neck brace on the plaintiff. The plaintiff was left in pain. He did not immediately see a doctor. On December 17, 1999, defendant Nurse Dawn informed the plaintiff that he no longer required the neck brace. On December 21, 1999, the plaintiff was seen by Defendant Dr. Stein. On December 26, 1999, the plaintiff wrote a letter to the Warden about the absence of a grab bar on the toilet. On December 30, 1999, the plaintiff was transferred to the Radgowski Correctional Institution. He could not stay there because he was a pretrial detainee and Radgowski did not house unsentenced inmates. The plaintiff returned to Bridgeport Correctional Center and, one week later, was transferred to Corrigan Correctional Institution.

Discussion

The defendants have filed a motion to dismiss on six grounds: (1) the claim for injunctive relief is moot; (2) the plaintiff has not exhausted his administrative remedies; (3) the claims for damages asserted against the defendants in their official capacities are barred by the Eleventh Amendment; (4) the plaintiff has not alleged the personal involvement or responsibility of any defendant; (5) the complaint fails to state a claim upon which relief may be granted; and (6) the defendants are protected by qualified immunity.

I.    Injunctive Relief

The plaintiff seeks injunctive relief in the form of an order that Bridgeport Correctional Center make the necessary

4

alterations to become wheelchair accessible.  The defendants move to dismiss all claims for injunctive relief on the ground that the claims are moot because, at the time he filed this action, the plaintiff was incarcerated in New York.

The Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.  See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976).  See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

A review of the file reveals that the plaintiff has returned to Connecticut and is incarcerated at the Osborn Correctional Institution.  He argues that his claim is not moot because it is "capable of repetition, yet evading review" and there is a reasonable likelihood that the condition giving rise to the claim will recur.  Although a transfer back to the Bridgeport Correctional Center is possible, there is no indication in the record that the plaintiff, now a sentenced inmate rather than a pretrial detainee, will be transferred back to the Bridgeport Correctional Center at any time prior to the completion of his

one-year sentence.[2]   <u>See</u> <u>Renne v. Geary</u>, 501 U.S. 312, 320 (1991)

("[T]he mootness exception for disputes capable of repetition yet

evading review ... will not revive a dispute which became moot

before the action commenced").   Accordingly, the court concludes

that his claims for injunctive relief are moot.

II.   <u>Exhaustion of Administrative Remedies</u>

The court next considers the defendants' argument that the

plaintiff has not exhausted his administrative remedies.   The

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a),[3] requires an

inmate to exhaust "administrative remedies as are available"

before bringing an "action . . . with respect to prison

conditions."   The term "prison conditions" is not defined in the

statute.   The Second Circuit has stated that "a prisoner is

required to exhaust administrative remedies pursuant to §

1997e(a) only if the challenged conduct on the part of

correctional employees was conduct which was either clearly

mandated by a prison policy or undertaken pursuant to a systemic

practice."   <u>Marvin v. Goord</u>, ___ F.3d ___, 2001 WL 686838, at *1

(2d Cir. 2001) (per curiam).

---

[2]The plaintiff states that he was sentenced to two four-year terms of imprisonment, execution suspended after one year.   He returned to Connecticut to begin serving that sentence in May 2001.   (<u>See</u> Pl.'s Mem. Opp. at 4.)

[3]Section 1997e(a) provides:   "No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Here, the plaintiff is challenging the wheelchair accessibility of the Bridgeport Correctional Center and the medical attention he received in response to his fall.  Clearly, the wheelchair accessibility of correctional facilities is a matter of departmental policy.

To date, the Second Circuit has not determined whether the exhaustion requirement applies to the alleged denial of proper medical treatment.  This district, however, has held that the provision of medical treatment is a condition of confinement requiring the exhaustion of administrative remedies before filing suit pursuant to section 1983.  See Calca v. Keefe, No. Civ.3:98CV01685(AWT), 2001 WL 256170, at *3 (D. Conn. Mar. 8. 2001) (distinguishing claims for assault from claims concerning the adequacy of food, clothing, shelter and medical care and holding that exhaustion requirement applies to claim of denial of non-emergency medical care); Martino v. Korch, No. 3:99cv2057(HBF), slip op. at 4 (D. Conn. Oct. 12, 2000) (Ruling on Motion to Dis ... .concluding that exhaustion requirement applied to claim of deliberate indifference to a serious medical need).  See also ..... v. Perez, 121 F. Supp. 2d 317, 321 (S.D.N.Y. 2000) (h...ding that claims of deliberate indiffere to medical needs require exhaustion of administrative remedies)(citing Cruz v. Gorton, 80 F. Supp. 2d 109, 116 (S.D.N.Y. 1999)).  The court concludes that the wheelchair accessibility of the facility and the provision of medical care

7

are prison conditions.    Thus, exhaustion of administrative
remedies is required before an action pursuant to section 1983 is
cognizable.

In opposition, the plaintiff contends that exhausting his
administrative remedies would be futile because he seeks monetary
damages which are not available through the inmate grievance
process.    In a recent decision, the Supreme Court has held that
inmates are required to exhaust administrative remedies before
filing suit in federal court regardless of the relief sought.
See Booth v. Churner, ___ U.S. ___, 2001 WL 567712, at *2 (May
29, 2001).    Thus, the plaintiff's argument is without merit.

The defendants have attached to their motion to dismiss a
copy of State of Connecticut Department of Correction
Administrative Directive 9.6 describing the grievance process
that was applicable at the time of the incidents giving rise to
this action.    The directive provides that the inmate should
attempt to resolve the problem informally and then file a
grievance.    If the grievance is denied, the inmate may appeal the
denial.

The plaintiff has provided a copy of an inmate grievance he
filed on November 15, 1999.    In the grievance, the plaintiff
stated that he was not confined in general population because the
dormitories were not wheelchair accessible and sought additional
recreation time.    Despite the plaintiff's characterization, this
grievance does not challenge the lack of access to adequate

8

shower and toilet facilities in general population.  Rather, it seeks recreation time comparable to that afforded other general population inmates.  Also, the grievance was filed before the plaintiff fell.  Thus, it does not challenge the adequacy of medical care.  The court concludes that the plaintiff has not exhausted his administrative remedies.

The court notes that, at the time he filed this action, the plaintiff had been transferred to a correctional institution in New York.  This fact does not excuse his failure to exhaust administrative remedies.  In <u>Booth</u>, the Supreme Court noted that the inmate had been transferred but assumed only that his claims for injunctive relief were rendered moot by the transfer.  The damages claims remained viable and subject to the exhaustion requirement.[4]  <u>See</u> 2001 WL 567712 at *2, n.2.  A district court within this circuit has remarked that inmates should not be rewarded for failing to participate in the institutional grievance process by being able to file an action in federal court without first seeking relief in the institutional grievance process.  <u>See</u> <u>Santiago v. Meinsen</u>, 89 F. Supp. 2d 435, 441 (S.D.N.Y. 2000); <u>see also</u> <u>Arashi v. United States</u>, No. 94 Civ.

---

[4]The court notes that in an unpublished decision, one district court has relied on <u>Booth</u> in determining that the fact that an inmate was transferred from New Hampshire to Massachusetts did not relieve him of the obligation to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a).  <u>See</u> <u>LaFauci v. New Hampshire Dep't of Corrections</u>, No. Civ. 99-253-M, 2001 WL 716123, at *2, n.1 (D.N.H. June 5, 2001).

7603 (CSH), 1995 WL 358676, at *3 (S.D.N.Y. June 14, 1995)

(considering the exhaustion requirement for federal inmates and

determining that inmate who was not in federal custody at the

time he first asserted his claim was not excused from exhaustion

requirement; inmate could assert his claim once he entered

federal custody).

The defendants' motion to dismiss is granted as to the

section 1983 claims.  The plaintiff may file an action containing

these claims after he exhausts his administrative remedies.

III. <u>ADA and Rehabilitation Act Claim</u>

The plaintiff also brings this action pursuant to section

504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

Title II of the ADA and section 504 of the Rehabilitation

Act apply to inmates in state correctional institutions.  <u>See</u>

<u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206 (1998)

(ADA); <u>Clarkson v. Coughlin</u>, 898 F. Supp. 1019, 1035 (S.D.N.Y.

1995) (Rehabilitation Act).  Both statutes permit claims to be

asserted against covered entities which include states and state

agencies or departments.  The Second Circuit has held that

"Congress has validly abrogated the States' immunity from suit

under both the ADA and Section 504 of the Rehabilitation Act."

<u>Kilcullen v. New York State Dep't of Labor</u>, 205 F.3d 77, 82 (2d

Cir. 2000).  Although the Supreme Court has held that Congress

did not validly abrogate state sovereign immunity with regard to

10

Title I of the ADA, it expressly reserved decision with regard to Title II. See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 960 n.1 & 968 (2001) (dismissing certiorari as improvidently granted regarding whether Title II constitutes a valid abrogation of state sovereign immunity).

The federal courts specifically addressing the issue are split over whether Title II constitutes a valid abrogation of state sovereign immunity. See, e.g., Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (holding invalid Congress' attempt to abrogate state sovereign immunity under Title II of the ADA), cert. dismissed, 529 U.S. 1001 (2000); Bane v. Virginia Dep't of Corrections, 110 F. Supp. 2d 469, 474-77 (W.D. Va. 2000) (summarizing prevailing analysis and holding invalid Congress' attempt to abrogate state sovereign immunity under Title II of the ADA); but see, e.g., Dare v. California, 191 F.3d 1167 (9th Cir. 1999) (holding the abrogation of state sovereign immunity was properly effected under Title II). One decision within this district has dismissed without discussion an ADA claim filed by a prisoner on the ground that the Eleventh Amendment barred the claim. See Mincewicz v. Parker, No. 3:00cv1433(CFD), 2001 WL 256162, at *3 (D. Conn. Feb. 26, 2001).

This court, however, need not resolve the abrogation of sovereign immunity issue. Even if Congress has validly abrogated state sovereign immunity in enacting Title II, the claims should be dismissed.

Although the Second Circuit has not yet determined whether the exhaustion requirement also applies to the plaintiff's ADA and Rehabilitation Act claims, the Sixth Circuit has determined that the requirement does apply.  In considering claims asserted by a federal prisoner under the ADA and Rehabilitation Act, the Sixth Circuit held that the Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies before filing a federal action regarding any claims.  See Lavista v. Beeler, 195 F.3d 254, 258 (6th Cir. 1999).

Section 1997e(a) refers to "any other federal law." 42 U.S.C. § 1997e(a).  In this case, the plaintiff's ADA and Rehabilitation Act claims concern conditions of confinement. Thus, the court concludes that the exhaustion requirement should apply to plaintiff's ADA and Rehabilitation Act claims as well as his section 1983 claims.[5]  Accordingly, these claims are dismissed without prejudice for failure to exhaust administrative remedies.[6]

---

[5]The court notes that in an unpublished decision, the Tenth Circuit affirmed the dismissal of a state inmates ADA and Rehabilitation Act claims because the inmate had not exhausted his administrative remedies before filing his federal action. See Lee v. Suther, No. 00-1014 (D.C. No. 99-Z-1568), 2001 WL 10244 (10th Cir. Jan. 4, 2001).

[6]Because the court has dismissed all claims on the grounds discussed, the court need not consider the remaining grounds raised by the defendants.

## Conclusion

The defendants' Motion to Dismiss [doc. #13] is **GRANTED**. The Clerk is directed to enter judgment in favor of the defendants and close this case. The judgment is without prejudice to the plaintiff commencing an action containing these claims after he exhausts his administrative remedies. In light of this ruling, the plaintiff's Motion for Appointment of Counsel [doc. #22] is **DENIED** as moot.

**SO ORDERED** this ___24___ day of July, 2001, at Bridgeport, Connecticut.

Alan H. Nevas
United States District Judge

13



# University of Connecticut Health Center

## CORRECTIONAL MANAGED HEALTH CARE

### Field Operations Director
Carl Robinson C.I.
285 Shaker Rd.
Enfield, CT 06082
(860) 763-8400; 8401
(860) 763-8409 fax

## MEMORANDUM

| | |
|---|---|
| **FROM:** | Clyde McDonald, Field Operations Director |
| **TO:** | James McKinnon, #100770    MacDougall CI |
| **DATE:** | May 24, 2004 |
| **SUBJECT:** | Medical Records |

Please be advised, that my office has completed a review of your concerns addressed to Commissioner Lantz dated 4/23/04. Based on review, this apparent error did not occur at Garner CI. Corrective action has been taken as both inmate Tetreault's and your health records have been reviewed and this matter has been addressed with medical records staff.

CM/nbb

Cc: Commissioner Lantz
    Mary Johnson, DOC
    Patricia Ottolini, DOC

Exhibit "A" James McE____

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Page: 1 end of patient

Room/Bed: 140D
Admit Date: 07-AUG-2003

Print At: 22-DEC-2003 09:31 am

Name: IMPRANDA, TIMOTHY      Sex: Male
MR#:100100134
DOB: 25-FEB-1960
Dr.
Reason for Visit: No Reason Entered
Allergies: penicillin.

CONS PERIOD: 01-JAN-2004  TO  31-JAN-2004

Age: 43 Years of the Client
Checked box of the consent
material shall not be transmitted to any
written consent or other authorization as per statutes.
the aforementioned statutes."

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 | 31 |

RANITIDINE 150MG TAB     (Like ZANTAC GRX)
DOSE: 150 MG / 1 TAB      KOP PO BID
Start: 31-OCT-2003 20:00  Stop: 27-DEC-2003 14:59
TAKE 1 TABLET BY MOUTH TWICE DAILY.
Dr. Chouhan, Ganpat

None

NEUTROXOL INH, 17GM       (Like VENTOLIN equiv.)
DOSE: 2 PUFF      KOP PO 04-6H PRN
Start: 11-AUG-2003 08:00  Stop: 05-FEB-2004 06:59
INHALE 2 PUFFS EVERY 4 TO 6 HOURS AS NEEDED
CARE WELL - REFILL ON REQUEST ONLY
Dr. Chouhan, Ganpat

PRN

Dep B Vac 1ml IM.
now 1mo/6mo.

Double at 8/29/03 - 3/29/04

Zantac 150mg po bid
x 60 days

Diovan  1/4/04   3/4/04  AM

Prednisone 40mg po
QD

Exhibit '2'   James McKinnon

CORRECTIONAL MANAGED HEALTH CARE MEDICATION ADMINISTRATION RECORD

Page: 2   Continued
Room/Bed: 125M
Admit Date: 07-JUN-2001

Entered At: 20-NOV-2003 02:25 pm
MCKINNON, JAMES L    Sex: Male
#00100770
Reason for Visit: No Reason Entered
Allergies: nkda.

DOB: 09-NOV-1961
Dr.

USE PERIOD: 01-DEC-2003 TO 31-DEC-2003

ACETAMINOPHEN 325MG        (Like TYLENOL GRX)
800/2350 MG / 2 TAB   KOP PO QD
Start: ... Stop: ...
TAKE 2 TABLETS DAILY.
-O'HALLORAN DO, JAMES

BASIS SOAP        (Like BASIS SOAP)
1 BAR   KOP TOP QD
Start: 05-JUL-2003 08:00   Stop: 11-DEC-2003 06:59
USE AS DIRECTED / EXTERNAL USE ONLY
-O'HALLORAN DO, JAMES

KETOCONAZOLE 2% 15GM        (Like NIZORAL CRM)
1 APP / 15 GM   KOP TOP BID
Start: ... Stop: ...
APPLY TO AFFECTED AREAS TWICE DAILY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
-O'HALLORAN DO, JAMES

DIPROSONE 100MG TAB        (Like WELLBUTRIN GRX)
100 MG / 1 TAB   DOT PO BID
Start: ... Stop: ...
TAKE 1 TABLET 2 TIMES DAILY
-Mayo, Susanne

FLUOXETINE 0.2MG TAB        (Like CLARIPEX GRX)
0.2 MG / 1 TAB   DOT PO BID
Start: 19-JUL-2003 20:00   Stop: 05-DEC-2003 07:59
TAKE 1 TABLET 2 TIMES DAILY
-Mayo, Susanne

Exhibit (3) James McK...

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Printed At: 22-DEC-2003 03:39 pm

Name: MCKINNON, JAMES L.        Sex: Male
MHN: X00100770
Reason for Visit: No Reason Entered
Number: n/da.

DOB: 05-NOV-1961      Age: 42 Years
Dr. ...
Height: 0.000

Page: 1    Continued

Room/Bed: 114B
Admit Date: 07-JAN-2001

FOR PERIOD: 01-JAN-2004 TO 31-JAN-2004

BUPROPION 100MG TAB        (Like WELLBUTRIN GRX)
DOSE: 100 MG / 1 TAB        DOT PO BID
Start: 10-DEC-2003 08:00  Stop: 19-JAN-2004 04:59
TAKE 1 TABLET 2 TIMES DAILY.
DO NOT SELF ADMINISTER
By: Margo, Susanne

CLONIDINE 0.2MG TAB        (Like CATAPRES GRX)
DOSE: 0.2 MG / 1 TAB        DOT PO BID
Start: 10-DEC-2003 20:00  Stop: 19-JAN-2004 19:59
TAKE 1 TABLET 2 TIMES DAILY.
DO NOT SELF ADMINISTER
By: Margo, Susanne

TOPIRAMATE 25MG TAB        (Like TOPAMAX)
DOSE: 50 MG / 2 TAB        DOT PO BID
Start: 10-DEC-2003 20:00  Stop: 19-JAN-2004 19:59
TAKE 2 TABLETS (50MG) TWICE DAILY.
DO NOT SELF ADMINISTER
By: Margo, Susanne

FOSINOPRIL DISOPROXIL 300MG TAB  (Like VIREAD 300MG TAB)
DOSE: 300 MG / 1 TAB        KOP PO QD
Start: 24-JAN-2003 17:00  Stop: 31-MAY-2004 04:59
TAKE 1 TABLET DAILY @ 5AM WITH FOOD.
Dr: MCALLORAN, JAMES

LAMIVUDINE 150MG        (Like EPIVIR)
DOSE: 150 MG / 1 TAB        KOP PO BID
Start: 03-MAR-2003 20:00  Stop: 31-MAY-2004 04:59
TAKE 1 TABLET BY MOUTH EVERY 12 HOURS @ 5AM AND
5PM.
Dr: MCALLORAN, JAMES

Exhibit (4) James McK[...]

**CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD**

Page: 3  end of patient

Room/Bed: 114B
Admit Date: 07-JUN-2001

PRINTED At: 22-DEC-2003 03:39 pm

Name: MCKINNON, JAMES L        Sex: Male
ID #: I00100770
Reason for Visit: No Reason Entered
Religion: nkda.

DOB: 09-NOV-1961   Age: 42 Years   Weight: 0.000
Dr.

FOR PERIOD: 01-JAN-2004  TO  31-JAN-2004

KETOCONAZOLE 2% 15GM          (Like NIZORAL CRM)
KOP: 1 APP / 15 GM        KOP TOP BID
START: 05-JUL-2003 08:00   Stop: 17-FEB-2004 07:59
APPLY TO AFFECTED AREAS TWICE DAILY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
07/20 -O'HALLORAN DO, JAMES

TRIAMCINOLON 454GM OINT        (Like )
KOP: 1 APP / 454 GM       KOP TOP PRN
START: 04-JUL-2003 22:46   Stop: 29-DEC-2003 21:43
APPLY UP TO TWICE A DAY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
-O'HALLORAN, JAMES

Milk with PM Meds

12/5/03

Fluclovine 4Um? PO  5/31/04
BID x 7 days  DOI
Start 12/5/03   Stop 1/8/04

Exhibit (5) James Mtns

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Page: 1    Continued

Printed At: 21-JAN-2004 09:14 am

MCKINNON, JAMES L
#00110770
Sex: Male    DOB: 05-NOV-1961    Age: 42 Years    Weight: 0.000
Doctor Visit: No Reason Entered
Allergies: nkda.

Room/Bed: 114B
Admit Date: 07-JUN-2001

PERIOD: 01-FEB-2004 TO 29-FEB-2004

Material shall not be transferred to or used for any other purpose than the above mentioned statutes. Written consent or other authorization of...

| | | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BUPROPION 100MG TAB (Like WELLBUTRIN GRX) 100 MG / 1 TAB DOT PO BID Start: 10-DEC-2003 08:00 Stop: 12-FEB-2004 07:59 KEY: TABLET 2 TIMES DAILY. DR. SELF ADMINISTER Margo, Susanne | 800 2000 | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX |
| CLONIDINE 0.2MG TAB (Like CATAPRES GRX) 0.2 MG / 1 TAB DOT PO BID Start: 10-DEC-2003 20:00 Stop: 12-FEB-2004 07:59 KEY: TABLET 2 TIMES DAILY. DR. SELF ADMINISTER Margo, Susanne | 800 2000 | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX |
| TOPIRAMATE 25MG TAB (Like TOPAMAX) 50 MG / 2 TAB DOT PO BID Start: 10-DEC-2003 20:00 Stop: 12-FEB-2004 07:59 KEY: 2 TABLETS (50MG) TWICE DAILY. DR. SELF ADMINISTER Margo, Susanne | 800 2000 | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | XX XX | | | XX | XX | XX XX | XX |
| ACYCLOVIR 400MG TAB (Like ZOVIRAX GRX TAB) 400 MG / 1 TAB KOP PO BID Start: 14-JAN-2004 20:00 Stop: 21-JAN-2004 19:59 KEY: 1 TABLET 2 TIMES DAILY DeFrance, Barbara | None | XX | XX | XX | XX | | | | | XX | XX | XX | | XX | XX | XX | XX |
| TENOFOVIR DISOPROXIL 300MG TAB (Like VIREAD 300MG TAB) 300 MG / 1 TAB KOP PO QD Start: 24-JAN-2003 17:00 Stop: 31-MAY-2004 04:59 KEY: 1 TABLET DAILY @ 5AM WITH FOOD. O'HALLORAN, JAMES | 400 | | | | | | | | | | | | | | | | XX |

Exhibit (2) (am) MKC

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

CONFIDENTIAL

DOB: 05-NOV-1961   Age: 42 Yairs   Weight:   0.000

"The confidentiality of ...
Chapter 823 of the Conn... of
material shall not be transmitted to a...
written consent of other authorization a  p...
the aforementioned statutes."

Page:  3  end of patient

Room/Bed: 114B
Admit Date: 07-JUN-2001

Printed At: 21-JAN-2004 09:14 am

MCKINNON, JAMES L          Sex: Male

#200100770

Reason for Visit: No Reason Entered

Weight: nkda

MED PERIOD: 01-FEB-2004  TO  29-FEB-2004

KETOCONAZOLE 2% 15GM          (like NIZORAL CRM)
APPLY 1PF / 15 GM       KOP TOP BID
START: 05-JUN-2003 08:00   Stop: 17-FEB-2004 07:59
DR: TO AFFECTED AREAS  TWICE DAILY
VERBAL USE ONLY / REFILL ON REQUEST ONLY
RX7220 -O'HALLORAN DO, JAMES

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 16 | 17 | 19 | 21 | 23 | 25 | 27 | 29 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 800 | | | | | | | | | | XX | XX | XX | XX | XX | XX | XX | |
| 2000 | | | | | | | | | | XX | XX | XX | XX | XX | XX | XX | |

Talk with Pm. meds

12/5/05

5/31/04

Exhibit 9  Jama McE...

E130

Printed At: 20-NOV-2003 02:25 pm

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Page: 3  end of patient

MCKINNON, JAMES L
NBR: 100100770
Reason for Visit: No Reason Entered.
Allergies: nkda.

DOB: 09-NOV-1961  Sex: Male  Age: 42 Years  Weight: 0.000
Dr: ...

Room/Bed: 125N
Admit Date: 07-JUN-2001

... shall not be transferred
... consent or other authoriza...
the aforementioned statutes.

USE PERIOD: 01-DEC-2003 TO 31-DEC-2003

(Like TOPAMAX)
TOPIRATE 25MG TAB
Dose: 50 MG / 2 TAB
DOT PO BID
Stt: 19-JUL-2003 20:00  Stop: 09-DEC-2003 07:59
PART 2 TABLETS (50MG) TWICE DAILY
DO NOT SELF ADMINISTER
Dr. Ratto, Susanne

(Like MOTRIN GRE)
IBUPROFEN 800MG
Dose: 800 MG / 1 TAB  DOT PO QHP
Start: 19-NOV-2003 09:15  Stop: 02-NOV-2003 08:14
PART 1 TABLET EVERY 6 HOURS AS NEEDED
PRN / DISPENSE ON REQUEST ONLY
Dr. Dupont, John

PEN

(Like)
PETROLATUM 454GM OINT
Dose: 1 APP / 454 GM  KOP TOP PRN
Start: 04-JUL-2003 22:46  Stop: 29-DEC-2003 21:43
APPLY UP TO TWICE A DAY
FEDERAL USE ONLY / REFILL ON REQUEST ONLY
Dr. Halloran, James

PEN

Snack 4pm
2. Date
(our gas mill) with 8pm meds