ExhibiT - A -

EXHIBIT A

CLERK
U.S. DISTRICT COURT
BRIDGEPORT CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT   Jul 25   9 35 AM '01

FILED

SHANNON DICKINSON                   :

     v.                           :        PRISONER
                                    :   Case No. 3:00CV1339(AHN)
CONNECTICUT DEPARTMENT              :
OF CORRECTION, et al.[1]            :
                                    :

## RULING ON DEFENDANTS' MOTION TO DISMISS

The plaintiff filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges that the defendants violated his rights by housing him in a cell that was not wheelchair accessible. He alleges further that he fell when attempting to use a toilet that was not equipped with a grab bar. He seeks damages as well as an injunction requiring the defendants to make the facility wheelchair accessible. Pending is the defendants' motion to dismiss. For the reasons that follow, the defendants' motion is granted.

### Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

---

[1]The named defendants in this action are the Connecticut Department of Correction, Commissioner John J. Armstrong, Warden Trapassieo, Dr. Stephen Stein and Nurse Dawn.

favorable to the plaintiff. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." <u>Gomes v. Avco Corp.</u>, 964 F.2d 1330, 1335 (2d Cir. 1992).

<u>Facts</u>

Keeping this standard in mind, the court accepts as true the following allegations taken from the complaint.

The plaintiff, a paraplegic, is confined to a wheelchair. On July 16, 1999, he was brought to the Bridgeport Correctional Center. The rear door, through which inmates are routinely

2

transported, was not wheelchair accessible. The staff had to lift plaintiff's wheelchair up several steps and almost dropped him. The plaintiff later spoke to the deputy warden about the incident.

On July 20, 1999, a state court judge ordered that the plaintiff be moved to a wheelchair/handicapped accessible facility. The plaintiff was not immediately moved. Instead, he continued to be housed in the hospital unit which was wheelchair accessible.

At one point, the plaintiff was moved from the hospital unit to general population. Showers and toilet facilities in general population were not wheelchair accessible. The plaintiff was denied access to these facilities for two days, at which time he was returned to the hospital unit. Even in the hospital unit, the toilets were not equipped with grab bars and the toilet bowls were too low. On October 13, 1999, the plaintiff was moved from the hospital unit to room 14 for two weeks because the hospital unit was overcrowded. Room 14 was not equipped with a toilet or sink. The plaintiff filed a grievance on November 15, 1999.

On December 15, 1999, the plaintiff fell while trying to move from his wheelchair to the toilet. He hit his head on the wall and injured his neck. Nurses Tony, Jeff and June Smith responded to his call. They lifted him from the floor and placed him on his bed. Nurse Jeff, the head shift nurse, determined that the plaintiff required a neck brace. Nurse Tony disagreed.

3

Nurse Jeff put a soft-collar neck brace on the plaintiff. The plaintiff was left in pain. He did not immediately see a doctor. On December 17, 1999, defendant Nurse Dawn informed the plaintiff that he no longer required the neck brace. On December 21, 1999, the plaintiff was seen by Defendant Dr. Stein. On December 26, 1999, the plaintiff wrote a letter to the Warden about the absence of a grab bar on the toilet. On December 30, 1999, the plaintiff was transferred to the Radgowski Correctional Institution. He could not stay there because he was a pretrial detainee and Radgowski did not house unsentenced inmates. The plaintiff returned to Bridgeport Correctional Center and, one week later, was transferred to Corrigan Correctional Institution.

### Discussion

The defendants have filed a motion to dismiss on six grounds: (1) the claim for injunctive relief is moot; (2) the plaintiff has not exhausted his administrative remedies; (3) the claims for damages asserted against the defendants in their official capacities are barred by the Eleventh Amendment; (4) the plaintiff has not alleged the personal involvement or responsibility of any defendant; (5) the complaint fails to state a claim upon which relief may be granted; and (6) the defendants are protected by qualified immunity.

### I.    Injunctive Relief

The plaintiff seeks injunctive relief in the form of an order that Bridgeport Correctional Center make the necessary

4

alterations to become wheelchair accessible.  The defendants move
to dismiss all claims for injunctive relief on the ground that
the claims are moot because, at the time he filed this action,
the plaintiff was incarcerated in New York.

The Second Circuit has held that an inmate's request for
declaratory and injunctive relief against correctional staff at a
particular correctional institution becomes moot when the inmate
is discharged or transferred to a different correctional
institution.  See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir.
1976).  See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d
Cir. 1983) ("The hallmark of a moot case or controversy is that
the relief sought can no longer be given or is no longer
needed").

A review of the file reveals that the plaintiff has returned
to Connecticut and is incarcerated at the Osborn Correctional
Institution.  He argues that his claim is not moot because it is
"capable of repetition, yet evading review" and there is a
reasonable likelihood that the condition giving rise to the claim
will recur.  Although a transfer back to the Bridgeport
Correctional Center is possible, there is no indication in the
record that the plaintiff, now a sentenced inmate rather than a
pretrial detainee, will be transferred back to the Bridgeport
Correctional Center at any time prior to the completion of his

5

one-year sentence.[2]  See Renne v. Geary, 501 U.S. 312, 320 (1991)

("[T]he mootness exception for disputes capable of repetition yet

evading review ... will not revive a dispute which became moot

before the action commenced").  Accordingly, the court concludes

that his claims for injunctive relief are moot.

II.  Exhaustion of Administrative Remedies

The court next considers the defendants' argument that the

plaintiff has not exhausted his administrative remedies.  The

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a),[3] requires an

inmate to exhaust "administrative remedies as are available"

before bringing an "action . . . with respect to prison

conditions."  The term "prison conditions" is not defined in the

statute.  The Second Circuit has stated that "a prisoner is

required to exhaust administrative remedies pursuant to §

1997e(a) only if the challenged conduct on the part of

correctional employees was conduct which was either clearly

mandated by a prison policy or undertaken pursuant to a systemic

practice."  Marvin v. Goord, ___ F.3d ___, 2001 WL 686838, at *1

(2d Cir. 2001) (per curiam).

---

[2]The plaintiff states that he was sentenced to two four-year
terms of imprisonment, execution suspended after one year.  He
returned to Connecticut to begin serving that sentence in May
2001.  (See Pl.'s Mem. Opp. at 4.)

[3]Section 1997e(a) provides:  "No action shall be brought
with respect to prison conditions under section 1983 of this
title or any other Federal law, by a prisoner confined in any
jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted."

Here, the plaintiff is challenging the wheelchair accessibility of the Bridgeport Correctional Center and the medical attention he received in response to his fall. Clearly, the wheelchair accessibility of correctional facilities is a matter of departmental policy.

To date, the Second Circuit has not determined whether the exhaustion requirement applies to the alleged denial of proper medical treatment. This district, however, has held that the provision of medical treatment is a condition of confinement requiring the exhaustion of administrative remedies before filing suit pursuant to section 1983. See Calca v. Keefe, No. Civ.3:98CV01685(AWT), 2001 WL 256170, at *3 (D. Conn. Mar. 8. 2001) (distinguishing claims for assault from claims concerning the adequacy of food, clothing, shelter and medical care and holding that exhaustion requirement applies to claim of denial of non-emergency medical care); Martino v. Korch, No. 3:99cv2057(HBF), slip op. at 4 (D. Conn. Oct. 12, 2000) (Ruling on Motion to Dis ....  ..concluding that exhaustion requirement applied to claim of deliberate indifference to a serious medical need). See also .. ....   v. Perez, 121 F. Supp. 2d 317, 321 (S.D.N.Y. 2000) (h. ang that claims of deliberate indiffere to medical needs require exhaustion of administrative remedies)(citing Cruz v. Gorton, 80 F. Supp. 2d 109, 116 (S.D.N.Y. 1999)). The court concludes that the wheelchair accessibility of the facility and the provision of medical care

7

are prison conditions. Thus, exhaustion of administrative remedies is required before an action pursuant to section 1983 is cognizable.

In opposition, the plaintiff contends that exhausting his administrative remedies would be futile because he seeks monetary damages which are not available through the inmate grievance process. In a recent decision, the Supreme Court has held that inmates are required to exhaust administrative remedies before filing suit in federal court regardless of the relief sought. See Booth v. Churner, ___ U.S. ___, 2001 WL 567712, at *2 (May 29, 2001). Thus, the plaintiff's argument is without merit.

The defendants have attached to their motion to dismiss a copy of State of Connecticut Department of Correction Administrative Directive 9.6 describing the grievance process that was applicable at the time of the incidents giving rise to this action. The directive provides that the inmate should attempt to resolve the problem informally and then file a grievance. If the grievance is denied, the inmate may appeal the denial.

The plaintiff has provided a copy of an inmate grievance he filed on November 15, 1999. In the grievance, the plaintiff stated that he was not confined in general population because the dormitories were not wheelchair accessible and sought additional recreation time. Despite the plaintiff's characterization, this grievance does not challenge the lack of access to adequate

8

shower and toilet facilities in general population. Rather, it seeks recreation time comparable to that afforded other general population inmates. Also, the grievance was filed before the plaintiff fell. Thus, it does not challenge the adequacy of medical care. The court concludes that the plaintiff has not exhausted his administrative remedies.

The court notes that, at the time he filed this action, the plaintiff had been transferred to a correctional institution in New York. This fact does not excuse his failure to exhaust administrative remedies. In Booth, the Supreme Court noted that the inmate had been transferred but assumed only that his claims for injunctive relief were rendered moot by the transfer. The damages claims remained viable and subject to the exhaustion requirement.[4]  See 2001 WL 567712 at *2, n.2. A district court within this circuit has remarked that inmates should not be rewarded for failing to participate in the institutional grievance process by being able to file an action in federal court without first seeking relief in the institutional grievance process. See Santiago v. Meinsen, 89 F. Supp. 2d 435, 441 (S.D.N.Y. 2000); see also Arashi v. United States, No. 94 Civ.

---

[4]The court notes that in an unpublished decision, one district court has relied on Booth in determining that the fact that an inmate was transferred from New Hampshire to Massachusetts did not relieve him of the obligation to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a).  See LaFauci v. New Hampshire Dep't of Corrections, No. Civ. 99-253-M, 2001 WL 716123, at *2, n.1 (D.N.H. June 5, 2001).

7603 (CSH), 1995 WL 358676, at *3 (S.D.N.Y. June 14, 1995)
(considering the exhaustion requirement for federal inmates and
determining that inmate who was not in federal custody at the
time he first asserted his claim was not excused from exhaustion
requirement; inmate could assert his claim once he entered
federal custody).

The defendants' motion to dismiss is granted as to the
section 1983 claims.  The plaintiff may file an action containing
these claims after he exhausts his administrative remedies.

III. ADA and Rehabilitation Act Claim

The plaintiff also brings this action pursuant to section
504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of
the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

Title II of the ADA and section 504 of the Rehabilitation
Act apply to inmates in state correctional institutions.  See
Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998)
(ADA); Clarkson v. Coughlin, 898 F. Supp. 1019, 1035 (S.D.N.Y.
1995) (Rehabilitation Act).  Both statutes permit claims to be
asserted against covered entities which include states and state
agencies or departments.  The Second Circuit has held that
"Congress has validly abrogated the States' immunity from suit
under both the ADA and Section 504 of the Rehabilitation Act."
Kilcullen v. New York State Dep't of Labor, 205 F.3d 77, 82 (2d
Cir. 2000).  Although the Supreme Court has held that Congress
did not validly abrogate state sovereign immunity with regard to

10

Title I of the ADA, it expressly reserved decision with regard to Title II. See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 960 n.1 & 968 (2001) (dismissing certiorari as improvidently granted regarding whether Title II constitutes a valid abrogation of state sovereign immunity).

The federal courts specifically addressing the issue are split over whether Title II constitutes a valid abrogation of state sovereign immunity. See, e.g., Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (holding invalid Congress' attempt to abrogate state sovereign immunity under Title II of the ADA), cert. dismissed, 529 U.S. 1001 (2000); Bane v. Virginia Dep't of Corrections, 110 F. Supp. 2d 469, 474-77 (W.D. Va. 2000) (summarizing prevailing analysis and holding invalid Congress' attempt to abrogate state sovereign immunity under Title II of the ADA); but see, e.g., Dare v. California, 191 F.3d 1167 (9th Cir. 1999) (holding the abrogation of state sovereign immunity was properly effected under Title II). One decision within this district has dismissed without discussion an ADA claim filed by a prisoner on the ground that the Eleventh Amendment barred the claim. See Mincewicz v. Parker, No. 3:00cv1433(CFD), 2001 WL 256162, at *3 (D. Conn. Feb. 26. 2001).

This court, however, need not resolve the abrogation of sovereign immunity issue. Even if Congress has validly abrogated state sovereign immunity in enacting Title II, the claims should be dismissed.

11

Although the Second Circuit has not yet determined whether the exhaustion requirement also applies to the plaintiff's ADA and Rehabilitation Act claims, the Sixth Circuit has determined that the requirement does apply. In considering claims asserted by a federal prisoner under the ADA and Rehabilitation Act, the Sixth Circuit held that the Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies before filing a federal action regarding any claims. See Lavista v. Beeler, 195 F.3d 254, 258 (6th Cir. 1999).

Section 1997e(a) refers to "any other federal law." 42 U.S.C. § 1997e(a). In this case, the plaintiff's ADA and Rehabilitation Act claims concern conditions of confinement. Thus, the court concludes that the exhaustion requirement should apply to plaintiff's ADA and Rehabilitation Act claims as well as his section 1983 claims.[5] Accordingly, these claims are dismissed without prejudice for failure to exhaust administrative remedies.[6]

---

[5]The court notes that in an unpublished decision, the Tenth Circuit affirmed the dismissal of a state inmates ADA and Rehabilitation Act claims because the inmate had not exhausted his administrative remedies before filing his federal action. See Lee v. Suther, No. 00-1014 (D.C. No. 99-Z-1568), 2001 WL 10244 (10th Cir. Jan. 4, 2001).

[6]Because the court has dismissed all claims on the grounds discussed, the court need not consider the remaining grounds raised by the defendants.

## Conclusion

The defendants' Motion to Dismiss [doc. #13] is **GRANTED**.
The Clerk is directed to enter judgment in favor of the
defendants and close this case.  The judgment is without
prejudice to the plaintiff commencing an action containing these
claims after he exhausts his administrative remedies.  In light
of this ruling, the plaintiff's Motion for Appointment of Counsel
[doc. #22] is **DENIED** as moot.

SO ORDERED this ___2 4___ day of July, 2001, at Bridgeport,
Connecticut.

Alan H. Nevas
United States District Judge

13

ExhibiT - B-

Exhibit T-B-

David McEw...

**CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD**

Page: 1 end of patient

Room/Bed: 140D
Admit Date: 07-AUG-2003

Printed At: 22-DEC-2003 09:31 am

Name: PATRENAULT, TIMOTHY          Sex: Male

DOB: 25-FEB-1960

Reason for Visit: No Reason Entered

Allergies: penicillin.

USE PERIOD: 01-JAN-2004 TO 31-JAN-2004

Dr.

The confidentiality of this record is required. This material shall not be transmitted to anyone without written consent or other authorization as provided in the aforementioned statutes.

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | XX | | XX | | XX | XX | XX | | XX | XX | XX | XX | XX | XX | XX |

RANITIDINE 150MG TAB          (Like ZANTAC GEN)    None
DOSE: 150 MG / 1 TAB          KOP PO BID
START: 31-OCT-2003 20:00  Stop: 27-DEC-2003 23:59
TAKE 1 TABLET BY MOUTH TWICE DAILY.
Dr Chouhan, Ganpat

VENTOROL INH, 17GM          (Like VENTOLIN equiv.)    PRN
DOSE: 2 PUFF              KOP PO Q4-6H PRN
START: 11-AUG-2003 08:00  Stop: 05-FEB-2004 06:59
INHALE 2 PUFFS EVERY 4 TO 6 HOURS AS NEEDED
THIS WILL - REFILL ON REQUEST ONLY
Dr Chouhan, Ganpat

App B Vac 1ml IM
now/1mo/6mo.

reorder of 8/29/03 - 2/29/04

Zantac 150mg po bid
x 60days

Chouhan  1/1/04

Radmanac 40mg po
QD
1/5 → 2/04

3/4/04

TN#: 100109134

Exhibit

CORRECTIONAL MANAGED HEALTH (CMHC) MEDICATION ADMINISTRATION RECORD

"The information contained in the Patient Health Record is protected ... Chapter 823 of the Connecticut ... material shall not be transferred or ... written consent or other authorization ... the aforementioned statutes."

Name: MCCLENDON, JAMES L          Sex: Male
No.: 00100770
Reason for Visit: No Reason Entered
Location: DNDA.

DOB: 09-NOV-1961
Dr.

Room/Bed: 125M
Admit Date: 07-JUN-2001

E 130

SSN PERIOD: 01-DEC-2003  TO  31-DEC-2003

ACETAMINOPHEN 325MG          [Like TYLENOL CRX]
OR: 4350 MG / 2 TAB KOP PO QD 21/8/03
START: 04-JUL-2003 08:00 Stop:
PAGE:2 TABLETS DAILY.
H#7220 -O'HALLORAN DO, JAMES                                    800

BASIS SOAP                    [Like BASIS SOAP]
                              KOP TOP QD
VOL: 1 BAR
START: 05-JUL-2003 08:00 Stop: 31-DEC-2003 06:59
USE AS DIRECTED / EXTERNAL-USE ONLY
REFILL/ON REQUEST ONLY / MAX ISSUE 1/MONTH
H#7220 -O'HALLORAN DO, JAMES                                    800

KETOCONAZOLE 2% 15GM          [Like NIZORAL CRM]
OR: 1 APP / 15 GM 12/18/03 KOP TOP BID 21/8/03
START: 05-JUL-2003 08:00 Stop: 31-DEC-2003
APPLY TO AFFECTED AREAS TWICE DAILY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
H#7220 -O'HALLORAN DO, JAMES                                    800
                                                               2000

DROPERON 100MG TAB            [Like WELLBUTRIN CRX]
OR: 100 MG / 1 TAB          DOT PO BID
START: 19-JUL-2003 08:00 Stop: 05-DEC-2003 11:52
RX: 1 TABLET 2 TIMES DAILY
PHO: SELF ADMINISTER /yr-   11/2/04
Renfro, Susanne             1113 - 12/5/03                      800
                                                               2000

CLONIDINE 0.2MG TAB           [Like CATAPRES CRX]
OR: 0.2 MG / 1 TAB          DOT PO BID
START: 19-JUL-2003 20:00 Stop: 05-DEC-2003 11:52
RX: 1 TABLET 2 TIMES DAILY
PHO: SELF ADMINISTER
Renfro, Susanne                                                 800
                                                               2000

Exhibit T

Jana McEntire

CORRECTIONAL MANAGED HEALTH CARE   MEDICATION ADMINISTRATION RECORD

Page: 1   Continued

Room/Bed: 1148
Admit Date: 07-JUN-2001

Printed At: 22-DEC-2003 03:39 pm

Name: MCKINNON, JAMES L          Sex: Male
ID#: 100100770
Reason for Visit: No Reason Entered
Allergies: nkda

DOB: 09-NOV-1951   Age: 52 Years   Weight:  0.000
Dr: ...

"...terial shall not be transmitted ... p o ...
written consent of other authorization ... p o ...
the aforementioned statutes."

MEDPERIOD: 01-JAN-2004 TO 31-JAN-2004

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

BUPROPION 100MG TAB          (Like WELLBUTRIN CRX)
Dose: 100 MG / 1 TAB          DOT PO BID
Sig: 11-DEC-2003 08:00   Stop: 13-JAN-2004 07:59
TAKE 1 TABLET 2 TIMES DAILY.
DO NOT SELF ADMINISTER.
Dr: Wargo, Susanne

CLONIDINE 0.2MG TAB          (Like CATAPRES CRX)
Dose: 0.2 MG / 1 TAB          DOT PO BID
Start: 10-DEC-2003 20:00   Stop: 13-JAN-2004 19:59
TAKE 1 TABLET 2 TIMES DAILY.
DO NOT SELF ADMINISTER.
Dr: Wargo, Susanne

TOPIRAMATE 25MG TAB          (Like TOPAMAX)
Dose: 50 MG / 2 TAB          DOT PO BID
Start: 14-DEC-2003 20:00   Stop: 13-JAN-2004 19:59
TAKE 2 TABLETS (50MG) TWICE DAILY.
DO NOT SELF ADMINISTER.
Dr: Wargo, Susanne

EMTRICITAB DISOPROXIL 300MG TAB   (Like VIREAD 300MG TAB)
Dose: 300 MG / 1 TAB          KOP PO QD
Start: 24-JAN-2003 17:00   Stop: 31-MAY-2004 04:59
TAKE 1 TABLET DAILY @ 5AM WITH FOOD.
Dr: Halloran, James

LAMIVUDINE 150MG          (Like EPIVIR)
Dose: 150 MG / 1 TAB          KOP PO BID
Start: 03-MAR-2003 20:00   Stop: 31-MAY-2004 04:59
TAKE 1 TABLET BY MOUTH EVERY 12 HOURS @ 5AM AND
Dr: Halloran, James

Name: MCKINNON, JAMES L          ID#: 100100770

Exhibit I

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Printed At: 22-DEC-2003 03:39 pm

MCKINNON, JAMES L            Sex: Male
(I#)I00100770
seen for Visit: No Reason Entered
Dr.
Lisplar: nkda

DOB: 09-NOV-1957    Age: 42 Years
*** This copy of Weight: 0.000
order of 813 of the order ***
material shall not be transferred ... o e e
written consent or other authorization a, pl... c
the aforementioned statutes.

Page: 3 end of patient

Room/Bed: 114B
Admit Date: 07-JUN-2001

USE PERIOD: 01-JAN-2004 TO 31-JAN-2004

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

ECOCONAZOLE 2% 15GM          (Like NIZORAL CRM)    800
KOP TOP BID                                        2000
(RX)# 1 APP / 15 GM
05-JUL-2003 08:00  Stop: 17-FEB-2004 07:59
SP5770 AFFECTED AREAS TWICE DAILY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
SP7220 -O'HALLORAN DO, JAMES

PETROLATUM 454GM OINT         (Like )            PEN
KOP TOP PEN
(RX)# 1 APP / 454 GM
Start: 04-JUL-2003 22:46  Stop: 29-DEC-2003 21:43
SP5770 UP-TO TWICE A DAY
EXTERNAL USE ONLY / REFILL ON REQUEST ONLY
SP6670 -O'HALLORAN, JAMES

Milk with pm Meals      pm [X]

2/5/03                    5/31/04

Acyclovir 400 mg po           8A
BID x7 days  DOT
                              8p

Start 1/31/04  Stop 1/31/04

IM#: I00100770

Exhibit

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Page: 1    Continued

Room/Bed: 114B
Admit Date: 07-JUN-2001

Weight:  0.000

DOB: 03-NOV-1961    Age: 42 Years

Sex: Male

Visitor Visit: No Reason Entered

PERIOD: 01-FEB-2004 TO 29-FEB-2004

ICKINSON, JAMES L
TOO100770

| Medication | | 15 | 17 | 18 | 23 | 25 | 27 | 29 |
|---|---|---|---|---|---|---|---|
| BUPROPION 100MG TAB (Like WELLBUTRIN GEN) 800 DOT PO BID Start: 14-DEC-2003 08:00 Stop: 12-FEB-2004 07:59 1 TABLET 2 TIMES DAILY. Non-SELF ADMINISTER Margo, Susanne | 2000 | XX | XX XX | | XX XX | XX XX | XX XX | XX XX |
| CLONIDINE 0.2MG TAB (Like CATAPRES GEN) 800 DOT PO BID Start: 10-DEC-2003 20:00 Stop: 12-FEB-2004 07:59 1 TABLET 2 TIMES DAILY. Non-SELF ADMINISTER Margo, Susanne | 2000 | XX | XX | | XX XX | XX XX | XX XX | XX XX |
| DIVALPROATE 25MG TAB (Like TOPAMAX) 800 DOT PO BID Start: 14-DEC-2003 20:00 Stop: 12-FEB-2004 07:59 2 TABLETS (50MG) TWICE DAILY. Non-SELF ADMINISTER Margo, Susanne | 2000 | XX | XX | | XX XX | XX XX | XX XX | XX XX |
| ACYCLOVIR 400MG TAB (Like ZOVIRAX GEN TAB) None KOP PO BID Start: 14-JAN-2004 20:00 Stop: 21-JAN-2004 19:59 1 TABLET 2 TIMES DAILY France, Barbara | | XX | XX | | XX | XX | XX | XX |
| TENOFOVIR DISOPROXIL 300MG TAB (Like VIREAD 300MG TAB) 800 KOP PO QD Start: 24-JAN-2003 17:00 Stop: 31-MAY-2004 04:59 1 TABLET DAILY @ SAM WITH FOOD. O'HALLORAN, JAMES | | | | | | | | |

TM#: TOO100770

Exhibit

James McK

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

CONFIDENTIAL
"The Department of Correction
Chapter 823 of the Connecticut
material shall not be transmitted
written consent of other authorization
the aforementioned statutes."

Page: 3  end of patient

Room/Bed: 114B
Admit Date: 07-JUN-2001

DOB: 05-NOV-1961   Age: 42 Years   Weight: 0.000

Printed At: 21-JUN-2004 09:14 am

McKINNON, JAMES L          Sex: Male
ID#00100770
Reason for Visit: No Reason Entered
Floor: nkda

FOR PERIOD: 01-FEB-2004 TO 29-FEB-2004

KONAZOLE 2% 15GM       (Like NIZORAL CRM)
APP / 15 GM            KOP TOP BID
05-JUL-2003 08:00  Stop: 17-FEB-2004 07:59
DUE TO AFFECTED AREAS TWICE DAILY
MEDICAL USE ONLY / REFILL/OR REQUEST ONLY
-O'HALLORAN DO, JAMES

800
2400
5
op

Milk with pm. meds

12/5/05      5/31/04

TMR: 100100770

| | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | XX | XX | XX | XX | XX | XX | XX |
| | | | | | | | | | XX | XX | XX | XX | XX | XX | XX |

Exhibit

CORRECTIONAL MANAGED HEALTH CARE - MEDICATION ADMINISTRATION RECORD

Page: 3  end of patient

Printed At: 20-NOV-2003 02:25 pm

Pt: MCKINNON, JAMES L   Sex: Male   DOB: 09-NOV-1961   Age: 42 Years   Weight: 0.000

ID: 00100770

Room/Bed: 125N
Admit Date: 07-JUN-2001

Reason for Visit: No Reason Entered.

Allergies: nkda.

KOP PERIOD: 01-DEC-2003

E 130

| Medication | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CARBAMAZE 25MG TAB  DOT PO BID  Dose: 50 MG / 2 TAB  Start: 19-JUL-2003 20:00  Stop: 09-DEC-2003 07:59  TAKE 2 TABLETS (50MG) TWICE DAILY  DO NOT SELF ADMINISTER  Dr. Harry, Susanne | 800-<br>2000 | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX | XX |
| NEOSPORIN 300MG  (Like MOTRIN GEL)  Dose: 800 MG / 1 TAB  KOP PO QSP  Start: 18-NOV-2003 09:15  Stop: 22-NOV-2003 09:14  TAKE 1 TABLET EVERY 6 HOURS AS NEEDED  FULL DISPENSE ON REQUEST ONLY  Dupont, John | PRN | | | | | | | | | | | | | | | |
| RENOGLATUM 45GM OINT  (Like )  Dose: 1 APP / 454 GM  KOP TOP PRN  Start: 04-JUL-2003 22:46  Stop: 29-DEC-2003 21:43  APPLY UP TO TWICE A DAY  INTERNAL USE ONLY / REFILL ON REQUEST ONLY  WELLORAN, JAMES | PRN | | | | | | | | | | | | | | | |

Name: MCKINNON, JAMES L    IM#: I00100770

ExhibiT - C -

Exhibit / *James McKinnon*
*James McKinnon*



# University of Connecticut Health Center

## CORRECTIONAL MANAGED HEALTH CARE

### Field Operations Director

Carl Robinson C.I.
285 Shaker Rd.
Enfield, CT 06082
(860) 763-8400; 8401
(860) 763-8409 fax

## MEMORANDUM

**FROM:**   Clyde McDonald, Field Operations Director

**TO:**   James McKinnon, #100770    MacDougall CI

**DATE:**   May 24, 2004

**SUBJECT:**   Medical Records

Please be advised, that my office has completed a review of your concerns addressed to Commissioner Lantz dated 4/23/04. Based on review, this apparent error did not occur at Garner CI. Corrective action has been taken as both inmate Tetreault's and your health records have been reviewed and this matter has been addressed with medical records staff.

CM/nbb

Cc: Commissioner Lantz
Mary Johnson, DOC
Patricia Ottolini, DOC

Exhibit D

— D —  Exhibit                          James mckin

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES McKINNON                     :    PRISONER
                                        CIVIL NO. 3:03CV158 (JCH)(HBF)

    v.                               :

LINDA MESSENGER, ET AL.            :    APRIL 26, 2004

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR COURT TO OBTAIN DISCOVERY DATED APRIL 15, 2004

## I.    INTRODUCTION

The defendants filed a Motion for Summary Judgment with accompanying Memorandum, Affidavits and Local Rule 56(a)1 Statement on March 18, 2004. The plaintiff then filed a Declaration in Opposition to Defendants' Motion for Summary Judgment on March 30, 2004 to which the defendants filed a Reply on April 13, 2004. The plaintiff has now filed a pleading entitled Motion for Summary Judgment and Motion for Court to Obtain Discovery Inspection which pleading is dated April 15, 2004. This most recent pleading of the plaintiff consists of three pages wherein he restates in a general way the standards for granting a motion for summary judgment and attaches seven medication cards for the period December, 2003 through February, 2004.

## II.    ARGUMENT

The nature of the plaintiff's most recent filing dated April 15, 2004 is unclear, however, it is certainly not a motion for summary judgment. The filing does not comply with any of the requirements of Rule 56 of the Fed. R. Civ. Proc. or Local Rule 56 relating to motions for summary judgment. In addition, this most recent filing does not relate to or discuss any of the

claims set forth in the Amended Complaint in this case. Finally, the seven exhibits attached to the filing consists of medication cards for the period December, 2003 to February, 2004 which do not relate to any of the claims in this case or any of the defendants in this case. The three defendants in this case were all employed at the Garner Correctional Institution ("Garner C.I.") when the plaintiff was residing at that facility. All of the claims in the case relate to the actions of the three defendants at Garner C.I. The plaintiff was transferred out of Garner C.I. on February 25, 2003 and has not returned to that facility since then. See earlier Affidavit of Linda Messenger, para. 6 and Exhibit A to Messenger Affidavit.

At best, the most recent filing of the plaintiff can be viewed as a second response to the defendants' pending Motion for Summary Judgment. As such, it has no relevancy to the issues which are the subject of this case and creates no genuine issue as to any material fact in this case.

## III.    CONCLUSION

For all of the reasons set forth herein and in the defendants' earlier Motion for Summary Judgment and documents filed therewith, the defendants' Motion for Summary Judgment should be granted.

DEFENDANTS
Linda Messenger, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _Richard Couture_

Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05480
E-Mail:  richard.couture@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was sent by first class mail, postage prepaid, this 26th day of April, 2004, to:

      James McKinnon, No. 100770
      MacDougall-Walker Correctional Institution
      1153 East Street South
      Suffield, CT  06080

                        Richard T. Couture
                        Assistant Attorney General

Exhibit-E-

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES McKINNON            :    PRISONER
                                     CIVIL NO. 3:03CV158 (JCH)(HBF)

v.                              :

LINDA MESSENGER, ET AL.       :      MARCH 18, 2004

## NOTICE OF MANUAL FILING

Please take notice that defendants, Linda Messenger, et al., have manually filed the following documents:

- a. Affidavit of Linda Messenger, L.P.N., with attached exhibits A through H;
- b. Affidavit of Iris Carlone, R.N., with attached exhibit A;
- c. Affidavit of Helen Dorsey;
- d. Affidavit of James O'Halloran, D.O., with attached exhibits A through G;
- e. Affidavit of Edward Blanchette, M.D.;
- f. Affidavit of Joan Dobson, R.N.;
- g. Affidavit of Barbara Straiton, L.P.N., with attached exhibit A; and
- h. Attachments A (Administrative Directive 9.6) and C (Ruling and Order July 24, 2001 AHN) to Defendants' Memorandum in Support of Motion for Summary Judgment.

These document have not been filed electronically because

[ X ]   the documents cannot be converted to an electronic format
[   ]   the electronic file size of the document exceeds 1.5 megabytes
[   ]   the document or thing is filed under seal pursuant to Local Rule of Civil Procedure 5(d) or Local Rule of Criminal Procedure 57(b)
[   ]   Plaintiff/Defendant is excused from filing this document or thing by Court order.

The documents have been manually served on all parties.

Respectfully submitted,

_Richard Couture_
Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Phone: (860) 808-5450
Fax: (860) 808-5591
E-mail: richard.couture@po.state.ct.us
Federal Bar No. ct05480

## CERTIFICATION

I hereby certify that a copy of the foregoing Notice of Manual Filing was sent by first class mail, postage prepaid, this 18th day of March, 2004, to:

James McKinnon, No. 100770
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06080

Richard T. Couture
Assistant Attorney General