UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

F I L E D

2005 MAR 11  P 2: 25

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

JAMES MCKINNON                    :

        v.                        :         PRISONER
                                  :    Case No.  3:03cv158(JCH)(HBF)
LINDA MESENGER, et al.[1]         :

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, James McKinnon, currently confined at the
Corrigan Correctional Institution in Uncasville, Connecticut,
commenced this civil rights action pursuant to 28 U.S.C. § 1915.
He alleges that the defendants were deliberately indifferent to
his medical needs on two occasions in December 2002 and one
occasion in January 2003.  Pending before the court are cross-
motions for summary judgment.  For the reasons set forth below,
the defendants' motion is granted and the plaintiff's motions are
denied.

I.    Standard of Review

"The trial court's task at the summary judgment motion stage
of the litigation is carefully limited to discerning whether
there are genuine issues of material fact to be tried, not to

---

[1]The defendants named in the amended complaint are Linda
Mesenger, Iris Prescott, and Helen Dorsey.  Iris Prescott has
filed an affidavit stating that her name is now Iris Carlone.
Hereinafter, the court will refer to Iris Prescott as Iris
Carlone.  The plaintiff mistakenly identified Linda Messenger as
Linda Mesenger in the amended complaint.  Hereinafter, the court
will refer to defendant Messenger by her proper name.

deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Not all factual disputes are material.  The court considers the substantive law governing the case to identify those facts which are material.  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  An asserted dispute over a material fact is considered "genuine," so as to defeat the motion for summary judgment, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  McCarthy v. American Int'l Group, Inc., 283 F.3d 121,

2

124 (2d Cir. 2002).

Even though the burden is on the moving party to demonstrate the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted). It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2002) (internal quotation marks and citation omitted). Instead, the non-moving party must produce admissible evidence that supports its pleadings. See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968). A "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).

In reviewing a motion for summary judgment, the court resolves all ambiguities and draws all inferences in favor of the

3

nonmoving party. See Niagara Mohawk, 315 F.3d at 175.  Thus,
"[o]nly when reasonable minds could not differ as to the import
of the evidence is summary judgment proper." Bryant v. Maffucci,
923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).
See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788
(2d Cir. 1992).  Where one party is proceeding pro se, the court
reads the pro se party's papers liberally and interprets them to
raise the strongest arguments suggested therein. See Burgos v.
Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal
interpretation, however, a "bald assertion," unsupported by
evidence, cannot overcome a properly supported motion for summary
judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).  A
motion for summary judgment cannot be defeated "merely . . . on
the basis of conjecture or surmise." Trans Sport, Inc. v.
Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992)
(citation and internal quotation marks omitted).

When cross-motions for summary judgment are presented to the
court, summary judgment should not be granted "unless one of the
moving parties is entitled to judgment as a matter of law upon
facts that are not genuinely in dispute." Heyman v. Commerce &
Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

II.  Facts[2]

Dr. James O'Halloran is board certified in Internal Medicine and Infectious Disease.  He has conducted Infectious Disease Clinics at Garner Correctional Institution for the past four years.  During the plaintiff's incarceration at Garner, Dr. O'Halloran examined the plaintiff in the Infectious Disease Clinic about once every three months in order to monitor and treat the plaintiff, whose condition was relatively stable. During the three month interval between appointments in the Infectious Disease Clinic, most routine medical needs of infectious patients can be treated by the regular medical nursing and physician staff at Garner.  On numerous occasions, Dr. O'Halloran, Nurse Messenger and other medical staff informed the

---

[2]The facts are taken from the defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute [doc. # 30-2].  The plaintiff filed a Local Rule 56(a)2 Statement [doc. # 33-2], but the Statement fails to include any facts relating to the allegations in the amended complaint.  The facts all relate to a time period before the allegations in the amended complaint. Because the plaintiff has not filed a Local Rule 56(a)2 Statement in opposition to the facts set forth in the defendants' Local Rule 56(a)1 Statement, the facts in the defendants' Statement are deemed admitted.  See Rule 56(a)1, Fed. R. Civ. P. and Doc. # 32. The facts are also taken from the Affidavits of Linda Messenger, Iris Carlone, Helen Dorsey, James O'Halloran, Edward Blanchette and Joan Dobson and the exhibits attached to those affidavits [doc. # 30-31] and the  plaintiff's verified complaint and exhibits attached to the complaint.  See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("a verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e).").

plaintiff of the protocol for scheduling appointments with the Infectious Disease Clinic and the policy regarding treatment of non-infectious disease related medical needs by facility medical personnel. If an inmate seeks to be seen in the Infectious Disease Clinic prior to his next appointment, his or her request must be assessed by the HIV contact nurse. It is the responsibility of the HIV contact nurse to determine if the inmate must be seen in the Infectious Disease Clinic or can be treated by the facility medical staff.

On November 20, 2002, Dr. O'Halloran examined the plaintiff in the infectious disease clinic at Garner Correctional Institution. He discontinued one medication and scheduled the plaintiff undergo liver function tests and other bloodwork in two months and to return to the clinic after the blood work had been performed and the results had been received by the clinic. Dr. O'Halloran also prescribed one bar of Basis soap per month for six months and Vaseline for six months.

Nurse Linda Messenger is a Licensed Practical Nurse who has served as the HIV contact nurse at Garner Correctional Institution since January 2002. Her responsibilities include: scheduling appointments for the Infectious Disease Clinic, scheduling medical tests and examinations ordered by the Infectious Disease physicians, scheduling emergency appointments with the Infectious Disease physicians, assessing complaints of

6

HIV-infected inmates and issues relating to their treatment and ensuring compliance with the <u>Doe v. Meachum</u>, No. H88-562 (PCD) (JGM) consent decree.

On December 7, 2002, Nurse Messenger was dispensing medications at the medication window at Garner Correctional Institution at approximately 1:20 p.m. when the plaintiff came to window and asked for his multivitamin pill. Nurse Messenger informed the plaintiff that he was supposed to pick up his multivitamin pill at 8:00 a.m. and that she did not have the multivitamin to dispense to him. If an inmate does not come to the medication window for his medication at 8:00 a.m., the medication is kept at the window until 10:30 a.m. If the inmate does not come to the window by 10:30 a.m., the inmate will usually have to wait until the time he is scheduled for his next dose of the medication. The plaintiff received his multivitamin pill the following day at 8:00 a.m.

In December 18, 2002, the plaintiff informed Nurse Iris Carlone, formerly Nurse Iris Prescott, that he needed to see Dr. James O'Halloran. Dr. O'Halloran was conducting an infectious disease clinic at the facility that day. Nurse Carlone informed Nurse Messenger regarding the plaintiff's request. The plaintiff was not scheduled to see Dr. O'Halloran until early February 2003. Nurse Messenger asked Nurse Carlone to meet with the plaintiff to determine why he needed an emergency appointment

7

with Dr. O'Halloran.  Nurse Carlone brought the plaintiff to a
private room, asked him why he needed to see Dr. O'Halloran, and
explained the procedure for scheduling appointments with the
Infectious Disease Clinic.  The plaintiff did not mention any
particular medical problem and refused to discuss the reason he
needed to see Dr. O'Halloran.  Nurse Carlone then reported what
had transpired at her meeting with the plaintiff to Nurse
Messenger.  Because the plaintiff refused to disclose the reason
he sought an appointment with Dr. O'Halloran and Nurse Carlone
did not observe any symptoms or behavior warranting an emergency
appointment with Dr. O'Halloran, Nurse Messenger denied the
plaintiff's request.

On January 8, 2003, the nursing staff asked Dr. O'Halloran
if he would see the plaintiff because of the plaintiff's
continued refusal to discuss medical issues with anyone other
than Dr. O'Halloran.  Dr. O'Halloran agreed to see the plaintiff
that day.  The plaintiff asked Dr. O'Halloran for a bar of Basis
soap for his dry skin and to look at his toenails.  Dr.
O'Halloran ordered another bar of Basis soap for the plaintiff
and continued the anti-fungal medication for the plaintiff's
toenails.  Dr. O'Halloran also agreed to re-schedule the
plaintiff's Liver Function Tests to an earlier date.  In Dr.
O'Halloran's opinion, the plaintiff's request for soap and an
examination of his toenails could have been addressed by Garner

8

medical staff.

On May 29, 2002, Dr. O'Halloran prescribed Tylenol for the plaintiff's headaches.  The prescription expired on November 29, 2002.  The order could have been renewed by the physician working in the medical unit at Garner, if the plaintiff had made such a request to the physician.  During the plaintiff's visit with Dr. O'Halloran on January 8, 2003, he did not complain of headaches or request that Tylenol be re-ordered for his headaches.

On January 22, 2003, the plaintiff complained of headaches and asked Dr. O'Halloran to re-new his prescription for Tylenol.  Dr. O'Halloran re-ordered Tylenol at that time.

IV.   Discussion

The defendants move for summary judgment on nine grounds.  The plaintiff has filed four motions for summary judgment in response to the defendants' motion for summary judgment.

A.    Plaintiff's Motions for Summary Judgment [docs. ## 35, 42 44, 53]

In the first motion for summary judgment, the plaintiff argues that the defendants are not entitled to summary judgment and requests that the court inspect a medical record of another inmate.  In the second and third motions, the plaintiff contends that Linda Messenger's affidavit, which was filed by the defendants' in support of their motion for summary judgment, was made in bad faith in violation of Rule 56(e), Fed. R. Civ. P.  The plaintiff contends that the Messenger Affidavit was made in

9

bad faith because a decision from another inmate's case is attached to it.  There are eight exhibits attached to Linda Messenger's Affidavit.  The exhibits consist of medical records and computer printouts indicating where the plaintiff has been incarcerated over the past twenty years.  There are no case decisions attached to the affidavit.  Accordingly, the plaintiff's objection to the affidavit is without merit and is overruled.

The defendants do attach a decision from another inmate's case to their memorandum in support of their motion for summary judgment.  The decision is attached as support for an argument that an inmate must exhaust administrative remedies as to a claim under the ADA.  There are no rules prohibiting a party from attaching exhibits to a memorandum in support of a motion for summary judgment.

Rule 56(a)1, D. Conn. Loc. Civ. R., provides:  "There shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  In addition, "[e]ach statement of material fact in a Local Rule 56(a) Statement . . . must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at

10

trial." D. Conn. L. Civ. R. 56(a)3.

The plaintiff has not filed a Local Rule 56(a)1 Statement with any of his motions for summary judgment. Thus, his motions for summary judgment are denied. The request for an inspection of another inmate's medical record is also denied.

B.   Defendants' Motion for Summary Judgment [doc. # 30]

The defendants argue that: (1) the Eleventh Amendment bars any claims for damages against them in their official capacities; (2) they have not violated any constitutional rights of the plaintiff; (3) to the extent that the plaintiff has suffered any injury, such injury was the result of plaintiff's own actions; (4) they are entitled to qualified immunity; (5) the plaintiff has failed to exhaust his administrative remedies as to his privacy claim; (6) the Americans with Disabilities Act ("ADA") does not provide for individual capacity suits; (7) the plaintiff's ADA allegations fail to state a claim upon which relief may be granted; (8) the plaintiff has failed to allege the personal involvement of any of the defendants in his claim under the ADA concerning his placement in H block; (9) the plaintiff has failed to allege the personal involvement of any of the defendants in his privacy claim or his claim under the ADA concerning his placement in H block. The fifth, sixth, seventh, eighth and ninth arguments are addressed to claims that are not set forth in the amended complaint. On September 20, 2004, the

11

court denied plaintiff's requests for leave to file a second
amended complaint to add ADA claims and a privacy claim
concerning his bloodwork.  Thus, the court need not consider the
arguments addressed to those claims.

     1.   Eleventh Amendment

    The defendants first argue that any claims seeking damages
against them in their official capacities are barred by the
Eleventh Amendment.  The plaintiff does not address this
argument.

    Generally, a suit for recovery of money may not be
maintained against the state itself, or against any agency or
department of the state, unless the state has waived its
sovereign immunity under the Eleventh Amendment.  See Florida
Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982).
Section 1983 does not override a state's Eleventh Amendment
immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The
Eleventh Amendment immunity which protects the state from suits
for monetary relief also protects state officials sued for
damages in their official capacity.  See Kentucky v. Graham, 473
U.S. 159 (1985).  A suit against a defendant in his official
capacity is ultimately a suit against the state if any recovery
would be expended from the public treasury.  See Pennhurst State
Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

    It is not clear from the amended complaint whether the

plaintiff sues the defendants in their official and individual capacities.  To the extent that the plaintiff sues the defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment.  The motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

2.    <u>Failure to State An Eighth Amendment Claim</u>

The defendants argue that they were not deliberately indifferent to plaintiff's medical needs during December 2002 and early January 2003.  The plaintiff claims that there are disputed issues of fact which preclude summary judgment.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Id.</u> at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  <u>See</u> <u>id.</u> at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  <u>McCloud v. Delaney</u>, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing <u>United States ex rel. Hyde v. McGinnis</u>, 429 F.2d 864 (2d Cir. 1970)).  A treating

13

physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." <u>Tomarkin v. Ward</u>, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting <u>Estelle</u>, 429 U.S. at 105-06).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. <u>Tomarkin</u>, 534 F. Supp. at 1230-31. Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. <u>See</u> <u>McCabe v. Nassau County Medical Center</u>, 453 F.2d 698, 704 (2d Cir. 1971); <u>Tomarkin v. Ward</u>, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982). In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. <u>See</u> <u>Hyde v. Mcinnis</u>, 429 F.2d 864, 868 (2d Cir. 1970); <u>Corby v. Conboy</u>, 457 F.2d 251, 254 (2d Cir. 1972); <u>Ross v. Kelly</u>, 784 F. Supp. 35, 44 (W.D.N.Y.), <u>aff'd</u>, 970 F.2d 896 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert. denied sub nom.</u> <u>Foote v. Hathaway</u>, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). <u>See also</u> <u>Nance v. Kelly</u>, 912 F.2d 605, 607

14

(2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants argue that the plaintiff has failed to allege that he suffered from a serious medical need with respect to any of the incidents set forth in the amended complaint. The court will address each incident separately.

a.    Failure to Dispense Vitamin Pill

The plaintiff claims that Nurse Messenger failed to dispense his vitamin pill on December 7, 2002, because he did not arrive at the medication window at the appropriate time. The plaintiff was scheduled to receive his vitamin pill at 8:00 a.m., but did not show up at the medication window until approximately 1:30 p.m. Nurse Messenger did not dispense the vitamin pill at 1:30 p.m. because she did not have the vitamin pack with her at that time. The plaintiff concedes that he received his vitamin pill the following day. The plaintiff does not allege or provide any evidence to demonstrate that a physician prescribed the multivitamin to treat a serious medical condition or that he suffered any injury as a result of Nurse Messenger's failure to dispense his vitamin pill on one day. Thus, the court concludes that the plaintiff has failed to meet his burden of presenting evidence to demonstrate a genuine issue of material as to the seriousness of any ill effects he may have experienced as a result of the denial of his multivitamin on December 7, 2002.

16

Accordingly, the motion for summary judgment is granted as to this claim.

b.    Appointment with Dr. O'Halloran

The plaintiff claims that on December 18, 2002, Nurse Iris Carlone and Nurse Messenger denied his request for an appointment with Dr. O'Halloran.  The defendants contend that the plaintiff has presented no evidence to suggest that the refusal of Nurses Carlone and Messenger to schedule the plaintiff to see Dr. O'Halloran caused the plaintiff to suffer any sort of injury. The only mention of any medical condition related to plaintiff's request to see Dr. O'Halloran on December 18, 2002, is in a grievance dated December 18, 2002, and received by Joan Dobson on January 6, 2003.[3]  In the grievance, the plaintiff mentions that he wanted an appointment with Dr. O'Halloran because one of the side effects of a medication that he was taking was headaches. The plaintiff did not, however, inform Nurse Carlone or Nurse Messenger that he was experiencing any side effects or what those side effects might have been.  The plaintiff refused to discuss why he needed to see Dr. O'Halloran with either Nurse Carlone or Nurse Messenger.

The plaintiff has submitted no evidence demonstrating that he suffered from any headaches during the period from December 18, 2002 to January 21, 2003.  In fact, the plaintiff made no

---

[3] The grievance is attached to the amended complaint.

17

complaints concerning headaches and did not request any pain relievers when he met with Dr. O'Halloran on January 8, 2003. It was not until January 22, 2003, that he asked Dr. O'Halloran to renew an order for Tylenol. The court concludes that the plaintiff has failed to meet his burden of demonstrating that the refusal of Nurses Carlone and Messenger to schedule him for appointment with Dr. O'Halloran on December 18, 2002, caused him to suffer a serious injury or exacerbated a serious medical condition.

Even if the court were to assume that the plaintiff suffered a serious injury due to his inability to see Dr. O'Halloran on December 18, 2002, the plaintiff has failed to allege or provide evidence to show that the Nurses Carlone and Messenger were deliberately indifferent to that injury. The medical records and the affidavits of Nurses Carlone and Messenger reflect that the plaintiff was not scheduled for an appointment with Dr. O'Halloran until the end of January 2003. On December 18, 2002, the plaintiff sought an emergency appointment, but refused to inform Nurses Carlone and Messenger regarding the reason for his request for the appointment. Part of Nurse Messenger's job as the HIV contact nurse at Garner was to triage the requests and complaints of HIV inmates between scheduled appointments. Thus, it was not unreasonable for her to attempt to determine why the plaintiff needed to schedule an emergency appointment with

18

Dr. O'Halloran.

Based on the fact that the plaintiff refused to disclose the
reason for the emergency appointment and her observation that
plaintiff was not suffering from any condition warranting an
appointment, Nurse Messenger did not schedule the plaintiff for
an emergency appointment with Dr. O'Halloran.  The plaintiff has
presented no evidence to demonstrate that either Nurse Carlone or
Nurse Messenger was aware of the reason for his request to see
Dr. O'Halloran.  In light of these facts, the plaintiff has
failed to meet his burden of demonstrating that there are genuine
issues of material fact as to whether Nurse Carlone and Nurse
Messenger were deliberately indifferent to the plaintiff's
medical needs on December 18, 2002.  The defendants' motion for
summary judgment is granted as to this claim.

        c.    <u>Failure to Order Basis Soap, Vaseline and
           Tylenol</u>

The plaintiff claims that he saw Dr. O'Halloran on January
8, 2003, and that he prescribed Basis Soap, Vaseline and Tylenol,
but Nurse Messenger failed to order these items.  He claims that
another nurse faxed the order to the pharmacy on January 21,
2003.

The plaintiff's medical records reflect that, on January 8,
2003, Dr. O'Halloran examined the plaintiff and prescribed
Vaseline and Basis Soap and rescheduled the plaintiff's liver
function tests.  There is a notation beside the order indicating

that it was faxed to the pharmacy on January 9, 2003. On January 21, 2003, a physician examined the plaintiff and prescribed Clonidine for the plaintiff's anxiety. The order was faxed to the pharmacy that same day. Dr. O'Halloran did not prescribe Tylenol for the plaintiff until January 22, 2003. A nurse faxed that order the same day. Thus, it is evident from the medical records that Dr. O'Halloran's orders for Basis Soap and Vaseline were faxed the day after the issuance of the orders and the order for Tylenol was faxed to the pharmacy the same day Dr. O'Halloran issued the order, January 22, 2003. The plaintiff has presented no evidence to refute the medical records. Accordingly, the plaintiff has failed to meet his burden of demonstrating that there are genuine issues of fact as to whether Nurse Messenger was deliberately indifferent to his medical needs with respect to Dr. O'Halloran's orders for Basis Soap, Tylenol and Vaseline. The motion for summary judgment is granted as to this claim.[4]

d.    <u>Claims Against Helen Dorsey</u>

The plaintiff lists Helen Dorsey as a defendant in the caption of the amended complaint and describes her as "medical Supervisor's Boss in Garner." Helen Dorsey was the Health

---

[4] Because the court has granted the motion for summary judgment on the ground that any official capacity money damages claims are barred by the Eleventh Amendment and any individual capacity claims fail to state a claim upon which relief may be granted, the court need not address the third and fourth arguments raised by the defendants.

Services Administrator at Garner from 2001 until May 2003, when she retired. There are no allegations in the amended complaint against Helen Dorsey. Attached to the amended complaint are appeal forms relating to the grievances the plaintiff filed regarding his medical treatment by Nurses Messenger and Carlone and Helen Dorsey. The forms include Helen Dorsey's responses to the plaintiff's appeals. The plaintiff does not allege how Helen Dorsey's responses to the appeals of his grievances violated his constitutional and federally protected rights.

The forms reflect that Helen Dorsey reviewed the plaintiff's medical records, noted that various treatment had been provided to the plaintiff and reiterated the process and protocol for requesting medical treatment from the Infectious Disease physician and for requesting medical treatment from the facility physicians in between visits to the Infectious Disease Clinic. At the time she responded to the appeals, the plaintiff had already been examined by Dr. O'Halloran, who had issued orders for various medications and products to treat the plaintiff's medical needs. The court concludes that the plaintiff has failed to meet his burden of demonstrating that there are genuine issues of fact as to whether Health Services Administrator Dorsey was deliberately indifferent to his medical needs. The motion for summary judgment is granted as to all claims against Helen Dorsey.

21

<u>Conclusion</u>

The plaintiff's motions for summary judgment [**doc. #35, 42, 44, 53**] are **DENIED** and defendants' motion for summary judgment [**doc. #30**] is **GRANTED**.  The Clerk is directed to enter judgment in favor of defendants and close this case.

This is **not** a recommended ruling.  The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes including the entry of judgment on February 9, 2004.  (<u>See</u> Doc. #23.)

**SO ORDERED** this __10__ day of __March__ , 2005, at Bridgeport, Connecticut.

_____
Holly B. Fitzsimmons
United States Magistrate Judge

22